986 F.2d 195
 25 Fed.R.Serv.3d 969, Bankr. L. Rep. P 75,111
 In the Matter of Daniel W. HENDRIX and Cathy L. Hendrix, Debtors.
Daniel W. HENDRIX, Debtor-Appellant,
v.
Sara A. PAGE and Marvin E. Page, Creditors-Appellees.
 No. 92-1815.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 7, 1992.
Decided Feb. 17, 1993.
 
 E. Gerry Barker, Jeffersonville, IN (argued), for appellees.
 Donald D. Levenhagen (argued), Hill, Fulwider, McDowell, Funk & Matthews, Indianapolis, IN, for debtors-appellant.
 Before CUMMINGS, POSNER, and FLAUM, Circuit Judges.
 POSNER, Circuit Judge.
 
 
 1
 This appeal concerns the effect of a discharge in bankruptcy on litigation against the debtor's liability insurer outside of bankruptcy. In re Shondel, 950 F.2d 1301 (7th Cir.1991), decided well before the appeal briefs were filed yet cited by neither party, dooms the appeal, but we shall not stop with that observation, as there are a few new wrinkles in this case.
 
 
 2
 On April 6, 1990, an automobile driven by Daniel Hendrix injured Sara Page. Hendrix had liability insurance, but, whether because he feared that his liability to Mrs. Page might exceed his coverage or for some other reason, he and his wife (but we can ignore her) declared bankruptcy under Chapter 7 of the Bankruptcy Code on June 5, 1990. On July 13, Hendrix added to the list of creditors that he had filed in the bankruptcy court the Pages, who at some time (the date is not in the record) between April 6 and July 13 had filed a personal injury suit against Hendrix in an Indiana state court. The Pages, despite being listed and receiving notice, did not file a claim in the bankruptcy proceeding. On September 12, 1990, the bankruptcy court granted Hendrix a discharge from his debts to the listed creditors. A lawyer nominally representing Hendrix, but in fact representing the Atlanta Casualty Company, Hendrix's liability insurer, then filed a motion for summary judgment in the Pages' state court action against Hendrix. The motion was granted, and final judgment in that action was entered in favor of Hendrix on May 22, 1991. None of the motion papers is in the record, or for that matter the order granting summary judgment. But apparently the basis of the order was that any debt that Hendrix might have had to the Pages had been discharged, so that the Pages were barred from trying to collect it by means of a suit in state court.
 
 
 3
 Shortly afterward, the Pages filed a motion to reopen the bankruptcy proceeding. The motion asked the bankruptcy judge to modify Hendrix's discharge so that they could ask the Indiana state court to reopen their suit for the purpose of proceeding against Hendrix's insurer. The bankruptcy judge granted the relief sought on September 23, 1991, the district judge affirmed, and Hendrix--which is to say Atlanta Casualty Company, for Hendrix has no interest in the matter, his discharge being secure, unmodified, and unchallenged, as far as any effort by the Pages to collect a judgment against him arising from the accident is concerned--appeals. The bankruptcy judge's order terminated a stand-alone proceeding commenced by the filing of the Pages' motion to reopen a closed bankruptcy, and the district judge's order affirming it was therefore a final order appealable to this court under 28 U.S.C. § 158(d).
 
 
 4
 The discharge had by virtue of 11 U.S.C. § 524(a)(2) the force of an injunction against a suit by any holders of listed debts (such as the Pages) to collect those debts from Hendrix. But as to whether such an injunction extends to a suit only nominally against the debtor because the only relief sought is against his insurer, the cases are pretty nearly unanimous that it does not. In re Shondel, supra, 950 F.2d at 1306-09; Green v. Welsh, 956 F.2d 30 (2d Cir.1992); In re Jet Florida Systems, Inc., 883 F.2d 970 (11th Cir.1989) (per curiam); In re Western Real Estate Fund, Inc., 922 F.2d 592, 601 n. 7 (10th Cir.1990) (per curiam); 3 Collier on Bankruptcy p 524.01 at pp. 524-16 to 524-17 (Lawrence P. King ed., 15th ed. 1991); see also In re Fernstrom Storage & Van Co., 938 F.2d 731, 733-34 (7th Cir.1991); contra, In re White Motor Credit, 761 F.2d 270, 274-75 (6th Cir.1985). The reasoning is that a suit to collect merely the insurance proceeds and not the plaintiff's full damages (should they exceed the insurance coverage) would not create a "personal liability of the debtor," because only the insurance company would be asked to pay anything, and hence such a suit would not infringe the discharge. 11 U.S.C. § 524(a)(2). It would be like a suit against a guarantor of the bankrupt's debt. An alternative line of reasoning proceeds from the statutory reminder that a discharge "does not affect the liability of any other entity on [the debtor's] debt," 11 U.S.C. § 524(e)--and the insurance company is the other. If this is right, the discharge did not in fact prevent the Pages from proceeding in state court against Hendrix, provided they were seeking only the proceeds of his insurance policy.
 
 
 5
 The state court, however, evidently thought that the discharge did apply to a suit effectively against Hendrix's insurer only; and we do not understand the Pages--who cite neither Shondel nor any other case which holds that the injunction automatically created by a discharge does not run in favor of the debtor's insurer--to be contesting the Indiana state court's determination; or, more precisely, to be contending that they have a shot at getting the Indiana judge to change his mind, or his judicial superiors to reverse him. If, moreover, that is all that the Pages had wanted--a chance to argue that the discharge never was applicable to their suit because it was a suit to impose liability on the insurance company rather than on the debtor--they wouldn't have had to move in the bankruptcy court. They didn't need the leave of that court to ask a state court judge to construe, or rather reconstrue, the scope of an injunction. It is not as if the bankruptcy court had impressed its own interpretation upon the injunction, so that the Pages would be risking contempt in asking a state court to interpret it differently. Rather, they accept that the injunction runs in favor of Atlanta Casualty Company as well as Hendrix but hope that if the bankruptcy court's action in lifting the injunction stands, they can induce the state court to withdraw its judgment, since the judgment was premised on the injunction or, what comes to the same thing, on the state judge's understanding of the injunction's scope.
 
 
 6
 Although the Pages never filed a claim or an appearance in the bankruptcy proceeding, as persons bound by the injunction that issued automatically upon the discharge of the listed debts they have standing to ask the bankruptcy court to lift it. "A defendant may move to dissolve an injunction if it injuriously affects his interests, although the order is not against him," Hall v. Orlikowski Construction Co., 24 Ill.App.3d 60, 62, 321 N.E.2d 23, 25 (1974)--and it is against the Pages, because they were on the list of creditors whose claims were discharged. A bankruptcy proceeding is in rem, and its orders can therefore bind nonparties, and actually the Pages were defendants, by virtue of their being listed as creditors, of the discharge, and of the automatic injunction, created by section 524, protecting the discharge. A variety of provisions allow such a defendant to obtain a dissolution or other modification of equitable relief in a bankruptcy matter. 11 U.S.C. §§ 105(a), 350(b), 727(d); Bankr.R. 5010. No doubt it is misleading, though it is the standard parlance, to speak of the Pages' petition as one "to reopen" the bankruptcy proceeding. Discharge brought into existence a perpetual injunction, making the bankruptcy proceeding a continuous, ongoing proceeding as to anyone bound by the injunction. 11 U.S.C. §§ 524(a)(2), (3); cf. Transgo, Inc. v. AJAC Transmission Parts Corp., 768 F.2d 1001, 1030 (9th Cir.1985). And although the Bankruptcy Code does not expressly authorize the modification of a discharge, as distinct from its revocation, 11 U.S.C. § 727(d), which is equivalent to the dissolution of the section 524 injunction created by the discharge, any court that issues an injunction can modify it for good cause on the motion of a person adversely affected by it. Transgo, Inc. v. AJAC Transmission Parts Corp., supra, 768 F.2d at 1030; Winterland Concessions Co. v. Trela, 735 F.2d 257, 260 (7th Cir.1984).
 
 
 7
 Until recently, however, the standard for modification of injunctions was the "grievous wrong" standard of United States v. Swift & Co., 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932) (Cardozo, J.). Lower courts, including our own, were restive under this confining standard. See, e.g., Alliance to End Repression v. City of Chicago, 742 F.2d 1007, 1020 (7th Cir.1984) (en banc); Duran v. Elrod, 760 F.2d 756, 758 (7th Cir.1985); New York State Ass'n for Retarded Children, Inc. v. Carey, 706 F.2d 956, 970 (2d Cir.1983) (Friendly, J.). Last year the Supreme Court gave it the coup de grace in Rufo v. Inmates of Suffolk County, --- U.S. ----, ---- - ----, 112 S.Ct. 748, 758-60, 116 L.Ed.2d 867 (1992); see also Board of Education v. Dowell, 498 U.S. 237, 111 S.Ct. 630, 112 L.Ed.2d 715 (1991). Although, as the Court emphasized in Rufo, that case, like the lower-court cases that had expressed dissatisfaction with the standard of Swift, involved institutional reform litigation, the "flexible standard" adopted in Rufo, --- U.S. at ----, 112 S.Ct. at 765, is no less suitable to other types of equitable case. Rufo assimilates the standard for modification to Fed.R.Civ.P. 60(b)(5), which, so far as pertinent to this case, authorizes relief from a judgment whenever "it is no longer equitable that the judgment should have prospective application." So now a court can modify an injunction that it has entered whenever the principles of equity require it do so. Of particular importance to this case, the court can, where equity requires, modify an injunction based on a misunderstanding of the applicable law. --- U.S. at ----, 112 S.Ct. at 763. Thus, if the section 524 injunction erroneously enjoined the Pages from proceeding against Atlanta Casualty, the court had the power, on the Pages' motion, to modify the injunction in order to correct the error. In re Shondel, supra, 950 F.2d at 1308-09; In re White Motor Credit, supra, 761 F.2d at 274.
 
 
 8
 Hendrix (that is to say, Atlanta Casualty) argues that the Pages have no standing to seek to lift the injunction, because if they succeed they will have gained nothing; they still will face an insurmountable obstacle in the form of the final judgment against them in the Indiana state court action. Of course if they really have nothing to gain one wonders why Atlanta Casualty has carried its fight against the motion through three courts. It must in fact believe that the Pages have some chance of getting the Indiana state court to vacate its final judgment, provided the premise of that judgment--the injunction against seeking to collect a discharged debt--is removed. The belief that we are imputing to Atlanta Casualty is realistic and establishes standing, which requires no more than a reasonable probability that the person seeking to maintain a legal action in federal court will gain something tangible, something akin to the kind of interest that the common law protects, if the action is successful. Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 264, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977); Warth v. Seldin, 422 U.S. 490, 504, 95 S.Ct. 2197, 2208, 45 L.Ed.2d 343 (1975); Price v. Pierce, 823 F.2d 1114, 1118 (7th Cir.1987).
 
 
 9
 The Pages could not, it is true, maintain in any federal court a personal-injury suit against Hendrix or its insurer arising out of the automobile accident in which Mrs. Page was injured--not because they would lack standing but because they would be barred by the final judgment in the state court action. 28 U.S.C. § 1738. That is not what they are trying to do. They are trying to modify an injunction that prevents them, or at least is thought to prevent them, from asking the state court to vacate its judgment. This is not a collateral attack on the state court judgment. The state court retains full power to refuse to vacate its judgment. Therefore the relief given by the bankruptcy judge does not constitute a refusal to accord full faith and credit to the state court judgment, as section 1738 requires. In re Shondel, supra, 950 F.2d at 1308.
 
 
 10
 We do not understand Atlanta to be arguing that if the bankruptcy judge had the power, as we think he did, to reach the merits of the Pages' motion to lift the injunction to permit them to go back into the Indiana state court, he abused it by granting the motion. The purpose of such an injunction is to protect the debtor from suits to collect debts that have been discharged in bankruptcy. Although the suit in the state court, if allowed to be reopened, will presumably still name Hendrix as the defendant, it is equally the case that the injunction, as modified, will still protect him against any effort by the Pages to collect the judgment in that suit (if they get a judgment) from him, should it exceed Atlanta Casualty's coverage or should Atlanta Casualty become insolvent. The lifting of the injunction to permit the Pages to proceed solely against Hendrix's insurer is thus not inconsistent with the purpose either of the injunction or of the statute by virtue of which it sprang into effect automatically upon Hendrix's discharge. The Pages' lawyer can be faulted for not having moved more swiftly and decisively. He could have asked the state court early on to stay its proceedings pending resolution of the bankruptcy issues, rather than suffering a final judgment to be entered against his clients. He could have asked the bankruptcy court to lift the automatic stay before discharge, and need not have waited for nine months after discharge to move in the bankruptcy court. These were considerations for the bankruptcy judge to weigh in the balance against the Pages' interest in being allowed to proceed on their tort claim without harming the debtor. They were ingredients in the judge's equitable consideration. They do not invalidate his order.
 
 
 11
 We acknowledge the oddness of an order that purports to relieve a party (the Pages) from the bar of an injunction that under the law of this circuit as set forth in the Shondel decision does not apply to them because they don't seek to impose personal liability on the party in whose favor the injunction runs. But Shondel had not yet been decided when the Pages filed, and the bankruptcy judge granted, their motion to modify the injunction to allow them to proceed against Atlanta. There was thus a danger that the injunction would, unless modified, bar an attempt to reopen the Indiana suit. Another possible bar was res judicata, in the form of collateral estoppel (issue preclusion, as distinct from claim preclusion). The state court judgment dismissing the Pages' suit might prevent them from arguing to the bankruptcy court that the injunction was inapplicable to their suit. Klingman v. Levinson, 831 F.2d 1292, 1295 (7th Cir.1987); 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure §§ 4419, 4425, at pp. 178-80, 253 (1981). If so--if the bankruptcy court was obliged to treat the injunction as having been authoritatively construed by the Indiana court for purposes of further litigation between these parties--still it was free to modify the injunction, as it did.
 
 
 12
 Even if there had been no good reason to suppose that the original injunction stood athwart the Pages' path--as there would not have been, if Shondel had been decided already and the Indiana court had not ruled against the Pages--a person subject to an injunction always has the right to ask the court that is administering it whether it applies to conduct in which the person proposes to engage. If this looks like a request for an "advisory opinion," it is one that even a federal court can grant, in order to prevent unwitting contempts, Regal Knitwear Co. v. NLRB, 324 U.S. 9, 15, 65 S.Ct. 478, 481-82, 89 L.Ed. 661 (1945), and frequently does. Perkins v. Lukens Steel Co., 310 U.S. 113, 122 n. 6, 60 S.Ct. 869, 874 n. 6, 84 L.Ed. 1108 (1940); Buckhanon v. Percy, 708 F.2d 1209, 1212 (7th Cir.1983); Godinez v. Lane, 733 F.2d 1250, 1256 (7th Cir.1984); Mikel v. Gourley, 951 F.2d 166, 168-69 (8th Cir.1991); FDIC v. Gordinier, 783 F.Supp. 1181, 1184 (D.Minn.1992) (a bankruptcy case, like this one). So here, at least if we set to one side the possible effect of the Indiana state court judgment, the bankruptcy court was free to clarify the inexplicit section 524 injunction against the Pages--inexplicit because it did not indicate whether it applied to a suit effectively against the debtor's liability insurer alone.
 
 
 13
 Whether or not the original injunction barred the Pages from going against the insurance company--obviously the modified one does not--it is a separate question whether the insurance company is liable to its insured's victim when the insured has been discharged from his debts to that victim. Ordinarily a liability insurance policy obligates the insurance company to pay only those sums that the insured becomes legally obligated to pay as damages. If by virtue of having been discharged from his listed debts the insured has no legal obligation to pay damages, it is not obvious where the insurance company's liability comes from. In a direct-action state, the company's liability would be direct rather than derivative, but Indiana is not such a state. Martin v. Levinson, 409 N.E.2d 1239, 1243 (Ind.App.1980). However, Indiana law requires insurance policies to contain "a provision that the insolvency or bankruptcy of the ... insured shall not release the insurance carrier from the payment of damages" for personal injury. Ind.Code § 27-1-13-7. We assume, although the parties do not discuss the issue, that this statute entitles the Pages to collect from Atlanta Casualty a damages judgment, should they obtain one, against Hendrix. But that is an issue of state law, not bankruptcy law.
 
 
 14
 We recur in closing to the parties' failure to cite Shondel. Although the cases are not identical, this appeal could not succeed unless we overruled Shondel. Needless to say, the appellant failed to make any argument for overruling Shondel, for it failed even to cite the case. This omission by the Atlanta Casualty Company (the real appellant) disturbs us because insurance companies are sophisticated enterprises in legal matters, Shondel was an insurance case, and the law firm that handled this appeal for Atlanta is located in this circuit. The Pages' lawyer, a solo practitioner in a nonmetropolitan area, is less seriously at fault for having failed to discover Shondel--and anyway his failure could not have been a case of concealing adverse authority, because Shondel supported his position. At all events, by appealing in the face of dispositive contrary authority without making arguments for overruling it, Atlanta Casualty filed a frivolous appeal.
 
 
 15
 This conclusion may seem questionable because, given the intrinsic difficulty of the issues presented by the appeal, and the fact that Shondel is the only case on point, the appellant, although it would still have lost, would not have risked sanctions had it urged us to overrule Shondel. But that is true in a great many cases in which sanctions are imposed under Fed.R.App.P. 38 for filing a frivolous appeal. The court does not ask whether the appeal might have been nonfrivolous if presented differently, with arguments and authorities to which the appellant in fact never alluded. If the appeal is blocked by authorities that the appellant ignored, the appellant is sanctioned without inquiry into whether the authorities if acknowledged might have been contested. Brooks v. Allison Division, 874 F.2d 489 (7th Cir.1989).
 
 
 16
 There is a further point. Although as we noted in Thompson v. Duke, 940 F.2d 192, 196 n. 2 (7th Cir.1991), the circuits are divided (and we have not taken sides) on whether a failure to acknowledge binding adverse precedent violates Fed.R.Civ.P. 11, if Atlanta Casualty's counsel knowingly concealed dispositive adverse authority it engaged in professional misconduct. ABA Model Rules of Professional Conduct Rule 3.3(a)(3) (1983). The inference would arise that it had filed the appeal for purposes of delay, which would be an abuse of process and thus provide an additional basis for imposition of sanctions under Fed.R.App.P. 38 ("damages for delay"). A frivolous suit or appeal corresponds, at least approximately, to the tort of malicious prosecution, that is, groundless litigation; a suit or appeal that is not necessarily groundless but was filed for an improper purpose, such as delay, corresponds to--indeed is an instance of--abuse of process. Hill v. Norfolk & Western Ry., 814 F.2d 1192, 1202 (7th Cir.1987); Brown v. Federation of State Medical Boards, 830 F.2d 1429, 1436 (7th Cir.1987); Grip-Pak, Inc. v. Illinois Tool Works, Inc., 694 F.2d 466, 471 (7th Cir.1982). Both, we hold, are sanctionable under Rule 38. We direct Atlanta Casualty's counsel to submit within 14 days a statement as to why it or its client, or both, should not be sanctioned under Rule 38 for failing to cite the Shondel case to us.
 
 
 17
 We are not quite done. Rule 46(c) of the appellate rules authorizes us to discipline lawyers who practice before us. In deciding whether a lawyer has engaged in conduct sanctionable under that rule, we have looked not only to the rules of professional conduct but also to Rule 11 of the civil rules, Mays v. Chicago Sun-Times, 865 F.2d 134, 139 (7th Cir.1989), which makes it sanctionable misconduct for a lawyer to sign a pleading or other paper, including a brief, if he has failed to make a reasonable inquiry into whether his position "is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Reasonable inquiry would have turned up Shondel. The lawyer who signed Atlanta Casualty's briefs in this court is therefore directed to submit a statement within 14 days as to why he should not be sanctioned under Rule 46(c).
 
 
 18
 AFFIRMED, WITH ORDER ON SANCTIONS.