**In re Kevin Dean SCHULTZ and Tammie Rena Schultz.**

No. 95–60544.

United States Bankruptcy Court,
E.D. Texas,
Tyler Division.

June 30, 2000.

Michael Brophy, Brophy and Pleasant, L.L.P., Houston, TX, for Eloisa Corpus, Individually and as Representative of the Estate of John Abel Corpus, Deceased.

Harlin C. Womble, Jr., Jordan, Hyden, Womble & Culberth, P.C., Corpus Christi, TX, for Old American County Mutual Fire Insurance Company.

Jason Searcy, Chapter 7 Trustee, Longview, TX, for Chapter 7 Trustee.

## MEMORANDUM OF DECISION REGARDING MOTION TO VALIDATE STATE COURT JUDGMENT

BILL G. PARKER, Bankruptcy Judge.

This matter is before the Court upon the Motion for Relief from Automatic Stay to Annul Automatic Stay and to Validate State Court Judgment (the "Motion") filed in the above-referenced reopened Chapter 7 case by Eloisa Corpus, Individually and as Representative of the Estate of John Abel Corpus, Deceased (the "Plaintiff"). The Court has jurisdiction to consider the Motion in this case pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). The Court has the authority to enter a final order regarding this contested matter since it constitutes a core proceeding as contem-

plated by 28 U.S.C. § 157(b)(2)(A), (G), (I) and (O). This Memorandum of Decision disposes of all issues presented by the Motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 17, 1994, John Abel Corpus was killed in a single-vehicle automobile accident while on a fishing trip with the Debtor, Kevin Schultz. Mr. Schultz allegedly offered the use of his pickup if Mr. Corpus, a nineteen year-old individual at the time, would drive it to a nearby store to purchase additional quantities of beer. Mr. Schultz entrusted his vehicle to Mr. Corpus, even though Mr. Corpus was allegedly at that time clearly intoxicated.

Approximately two years later, on July 16, 1996, the Plaintiff filed an original petition in the 128th Judicial District Court of Nueces County, Texas, styled as *Eloisa Corpus, Individually and as Representative of the Estate of Johnny Abel Corpus, Deceased v. Kevin Schultz* and assigned cause no. 96–3511–E (the "state court litigation"), alleging that the death of Johnny Corpus was proximately caused by the negligence and/or gross negligence of Kevin Schultz and that Mr. Schultz was liable to the Plaintiff for an unspecified amount of damages. Mr. Schultz failed to appear or to answer the allegations of the Plaintiff's petition and a default judgment in the amount of $537,500.00 was subsequently entered by the state district court on March 6, 1997 in that action (the "state court judgment").

The above actions were taken by the Plaintiff in the state court litigation without the knowledge that, on May 2, 1995, some fourteen months prior to the initiation of the state court litigation, Kevin Schultz (the "Debtor"),[1] had filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code in this Court. That Chapter 13 case was subsequently convert-

---

1. Mr. Schultz's wife, Tammie Schultz, was a joint debtor in the bankruptcy case. However, she was not named as a party in the state court litigation and thus, the Court will hereafter reference Mr. Schultz in a singular manner as the Debtor.

ed to a Chapter 7 liquidation on June 17, 1996 and Jason Searcy was appointed as the Chapter 7 trustee in the case.[2] Mr. Searcy determined that there were no assets available for distribution and he filed a Report of No Distribution with the Court on July 25, 1996. The Debtor subsequently received a discharge on October 18, 1996 and the bankruptcy case was closed on October 31, 1996. There is no factual dispute that the Plaintiff was never listed on the creditor matrix filed in the case nor was any claim arising from the death of Mr. Corpus listed or referenced in any manner in the schedules and statements filed by the Debtor in the bankruptcy case.

After some apparent but unidentified attempt by the Plaintiff to collect on the state court judgment, the Debtor attempted to assign to the Plaintiff a bad faith claim against his putative insurance carrier, Old American County Mutual Fire Insurance Company ("Insurer") based in part upon the failure of the Insurer to defend against the Plaintiff's claim. Upon realizing that such claim might, in fact, constitute property of the bankruptcy estate, the Plaintiff and the Debtor jointly requested this Court to reopen the Chapter 7 case for the purpose of administering this potential asset and the Court granted that request.

The Plaintiff thereafter filed her "Motion for Relief from Automatic Stay to Annul Automatic Stay and to Validate State Court Judgment." The Motion sought an annulment of the automatic stay as it applied to the commencement and continuation of the state court litigation and for validation of the judgment ultimately rendered in that litigation based upon the admitted fact that the Debtor never notified the Plaintiff of the pendency of the bankruptcy case. Following a hearing conducted on the motion, during which the Debtor joined in the request of the

Plaintiff and the only opposition to the annulment of the stay was voiced by the Insurer, this Court issued an "Interim Order Annulling Automatic Stay and Requiring Written Submission Regarding Modification of Discharge Injunction" which, on the basis of oral findings read into the record at the hearing, granted the Plaintiff's request for annulment of the automatic stay imposed by § 362 of the Bankruptcy Code as to the commencement and continuation of the state court litigation.

Because the March 6, 1997 state court judgment was rendered, however, at a time in which the automatic stay had been displaced as a matter of law by the discharge injunction imposed by § 524 of the Bankruptcy Code, the Plaintiff's request for a validation of the state court judgment would necessarily require a modification of that discharge injunction, even though the motion was not characterized as such and despite the fact that the parties wholly failed to address that issue at the hearing. Thus, in order to minimize costs to the parties and because there was no factual dispute as to the sequence of events upon which the motion was based, the parties were directed to tender to the Court a written submission as to whether the discharge injunction could and should be retroactively modified so as to validate the March 6, 1997 state court judgment as requested in the Plaintiff's Motion.

## II. DISCUSSION

The Plaintiff's request for the validation of the state court judgment raises some interesting issues regarding the nature and scope of a debtor's discharge in a Chapter 7 case. Though the term "validation" is not a term of art under the Bankruptcy Code, the Plaintiff is essentially asking the Court for a judicial determination that the state court judgment entered in March, 1997 constitutes a valid

---

**2.** Pursuant to this Court's usual procedures and Fed. R. Bankr.P.2002(e), creditors were notified that it did not appear as if there were any assets available for distribution in the

Debtors' Chapter 7 case and that it was unnecessary for creditors to file claims with the Court absent further notice to do so. No such notice was ever given.

and subsisting judgment against the Debtor, notwithstanding the prior discharge of debts received by the Debtor pursuant to 11 U.S.C. § 727 in October, 1996, and the simultaneous imposition of the discharge injunction on such date pursuant to 11 U.S.C. § 524. The Insurer is the sole objecting party to the request, asserting that the Plaintiff has no standing to request, and this Court has no power to grant, a modification of the discharge injunction arising from § 524.

However, it is clear that a bankruptcy court does possess the requisite power to grant a request for modification of the § 524 discharge injunction in order to allow a lawsuit against a debtor to proceed for the purpose of determining the liability of a third party. It has long been recognized that any court that issues an injunction has a continuing power to supervise and modify its injunctions in accordance with changed conditions. *Ranger Ins. Co. v. Wolcott (In re TLI, Inc.)*, 1998 WL 684242 (N.D.Tex.1998), *citing Mann Manufacturing, Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir.1971) in modifying a Chapter 11 plan injunction. In the specific context of plaintiffs seeking to modify the discharge injunction under § 524 in order to proceed against an insurer, the observations of Judge Posner of the Seventh Circuit in *Hendrix v. Page (In re Hendrix)*, 986 F.2d 195 (7th Cir.1993) are instructive:

Although the [plaintiffs] never filed a claim or an appearance in the bankruptcy proceeding, as persons bound by the injunction that issued automatically upon the discharge of the listed debts they have standing to ask the bankruptcy court to lift it. A defendant may move to dissolve an injunction if it injuriously affects his interests, although the order is not against him, (citations omit-

ted)—and it is against the [plaintiffs], because they were on the list of creditors whose claims were discharged. A bankruptcy proceeding is in rem, and its orders can therefore bind nonparties, and actually the [plaintiffs] were defendants, by virtue of their being listed as creditors, of the discharge, and of the automatic injunction, created by section 524, protecting the discharge. A variety of provisions allow such a defendant to obtain a dissolution or other modification of equitable relief in a bankruptcy matter. 11 U.S.C. §§ 105(a), 350(b), 727(d); Bankr.R. 5010 . . . . Discharge brought into existence a perpetual injunction, making the bankruptcy proceeding a continuous, ongoing proceeding as to anyone bound by the injunction. 11 U.S.C. §§ 524(a)(2), (3); *cf. Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1030 (9th Cir.1985). And although the Bankruptcy Code does not expressly authorize the modification of a discharge, as distinct from its revocation, 11 U.S.C. § 727(d), which is equivalent to the dissolution of the section 524 injunction created by the discharge, any court that issues an injunction can modify it for good cause on the motion of a person adversely affected by it. (citations omitted).[3]

See also, *In re Shondel*, 950 F.2d 1301, 1308–09 (7th Cir.1991)[finding "little difficulty concluding that the bankruptcy court had the power to modify the injunction issued pursuant to section 524,"] that such modifications are "frequently made," and that the power to modify a post-discharge injunction was "firmly within the general bankruptcy powers." It has also been recognized that a bankruptcy court's ability to modify the § 524 injunction is consistent with the Code's policy of maintaining con-

---

**3.** The Seventh Circuit in *Hendrix* also later found that standing in this context "requires no more than a reasonable probability that the person seeking to maintain a legal action in federal court will gain something tangible, something akin to an interest that the common law protects, if the action is successful,"

986 F.2d at 198, *citing Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977) and *Warth v. Seldin*, 422 U.S. 490, 504, 95 S.Ct. 2197, 2208, 45 L.Ed.2d 343 (1975).

trol over the bankruptcy discharge and avoiding misinterpretation and abuse in other courts. *See generally,* 3 COLLIER ON BANKRUPTCY ¶ 524.01 (15th rev. ed.2000).

However, even though the principle is firmly established that a bankruptcy court may modify the § 524 discharge injunction, it does not establish the circumstances under which it should exercise that power and, particularly, whether this Court should exercise that power in this case. In order to explore that question, one must focus upon the language of the relevant statutes and the purposes for which the modification of the discharge injunction is sought.

A. *Modification of Discharge Injunction to Establish Liability of Insurer.*

The motives of the Insurer in this case are clear. The Insurer opposes the modification of the discharge injunction because it assumes that it also enjoys its wide-reaching protections. Though it has obviously not been forced to relinquish any of its assets,[4] the Insurer assumes that, if the entry of discharge protects the Debtor from liability on the claim asserted by the Plaintiff, notwithstanding the fact that the Plaintiff was never notified of the bankruptcy filing, it too must be protected since its liability to a third party, if any, is derivative from that of the Debtor. However, a precise examination of the character and impact of the discharge reveals the fundamental misunderstanding of the Bankruptcy Code upon which such the Insurer's assumption is based.

The granting of a discharge in a Chapter 7 case obviously invokes certain permanent protections for the benefit of an individual debtor. As the name implies, it discharges the debtor "from all debts that arose before the date of the order for relief under this chapter....." 11 U.S.C. § 727(b).[5] The discharge also "...voids any judgment at any time obtained, to the extent that such judgment is a determination *of the personal liability of the debtor* with respect to any debt discharged under section 727...of this title, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(1). (emphasis added). It further "...operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect recover or offset any such debt *as a personal liability of the debtor,* whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). (emphasis added).

Conversely as to the rights of third parties to the protection of the discharge, § 524 is equally clear that the discharge injunction is to have no impact upon the liability of third parties. The plain language of § 524(e) explicitly provides that:

[E]xcept as provided in subsection (a)(3) of this subsection, discharge of a debt of

---

4. The Insurer argues that, as a result of the bankruptcy, it can never be forced to pay on a claim. It asserts that the insurance coverage became an asset of the bankruptcy estate upon the bankruptcy filing (and at that time ceased being an asset of the Debtor) and, since no claim has ever been asserted by the Plaintiffs against the bankruptcy estate (as opposed to the Debtor), there can be no claim to which the insurance coverage could ever apply. See ¶ 5 and ¶ 6 of the Insurer's "Response to Argument and Authorities of Eloisa Corpus Regarding Modification of Discharge Injunction." However, the Fifth Circuit has distinguished between ownership of an insurance policy and ownership of insurance proceeds under a policy and has ruled that, when a debtor has no legally cognizable claim to

the insurance proceeds, such proceeds do not constitute property of the bankruptcy estate. See, *Houston v. Edgeworth (In re Edgeworth),* 993 F.2d 51, 55–56 (5th Cir.1993).

5. 11 U.S.C. § 727(b) states, in relevant part, that:

[E]xcept as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, ...whether or not a proof of claim based upon any such debt ...is filed under section 501 of this title, and whether or not a claim based on any such debt ... is allowed under section 502 of this title.

the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

These statutes clearly reveal that the entry of a discharge order enjoins lawsuits and voids judgments pertaining to pre-petition debt only with respect to the "personal liability of the debtor." This phrase has consistently been construed as a limitation on the scope of the discharge and that these statutes do "not preclude a determination of the debtor's liability on the basis of which indemnification would be owed by another party." *Shondel,* 950 F.2d at 1306; *Hendrix,* 986 F.2d at 197 ["... a suit to collect merely the insurance proceeds and not the plaintiff's full damages (should they exceed the insurance coverage) would not create a 'personal liability of the debtor,' because only the insurance company would be asked to pay anything, and hence such a suit would not infringe the discharge."]; *Green v. Welsh,* 956 F.2d 30, 36 (2d Cir.1992)[finding that the discharge injunction as defined by §§ 524(a) and 524(e) allowed the continuation of a suit against a debtor without any need for a formal modification, "but only to prove liability as a prerequisite to recovery from the [debtors'] liability insurer."]. *See also, In re Western Real Estate Fund, Inc.,* 922 F.2d 592, 601 (10th Cir.1990); *In re Jet Florida Systems, Inc.,* 883 F.2d 970 (11th Cir.1989); *contra In re White Motor Credit,* 761 F.2d 270, 274–75 (6th Cir.1985), *but see* recognition of growing consensus in 3 COLLIER ON BANKRUPTCY ¶ 524.05 at 539 (15th ed. rev. 2000)["It is generally agreed that the debtor's discharge does not affect the liability of the debtor's insurer for damages caused by the debtor and that the creditor may seek to recover from the insurer."]

This general consensus has been endorsed by the Fifth Circuit. In *Houston v. Edgeworth (In re Edgeworth),* 993 F.2d 51 (5th Cir.1993), the Fifth Circuit considered whether medical malpractice plaintiffs should be allowed, notwithstanding the entry of the § 524 discharge injunction, to pursue their lawsuit against a debtor-physician in order to collect any resulting judgment solely against the physician's malpractice carrier. The Fifth Circuit framed the issue as follows:

In the liability insurance context, of course, a tort plaintiff must first establish the liability of the debtor before the insurer becomes contractually obligated to make any payment. The question, then, is whether section 524(a) acts to bar such liability-fixing suits even if a plaintiff has agreed to foreswear recover from the debtor personally and to look only to the policy proceeds.

In reversing the bankruptcy and the district court, the Circuit held that § 524 did not preclude the tort plaintiffs from pursuing their state court claims against the debtor as a nominal defendant in order to establish the insurance carrier's liability on the claim. The Court noted that a "discharge in bankruptcy does not extinguish the debt itself, but merely releases the debtor from personal liability for the debt." *Id.* at 53. It further agreed that

it makes no sense to allow an insurer to escape coverage for injuries caused by its insured merely because the insured receives a bankruptcy discharge. The "fresh-start" policy is not intended to provide a method by which an insurer can escape its obligations based simply upon the financial misfortunes of the insured. Such a result would be fundamentally wrong

*Id.* at 54. (citations omitted). Although it acknowledged that a different result might be necessary in the event that the debtor's pocketbook is threatened in some manner, such as by the imposition of defense costs or if there is some coverage dispute, the Court found that § 524 will not bar a suit so long as the costs of defense are borne by the insurer and there is no execution of judgment against the debtor personally.[6]

---

**6.** The Court acknowledges that there is currently a dispute between the Insurer and the

Thus, "[c]ourts have consistently held that the 'fresh start' of Chapter 7 is intended to apply only to debtors and is not intended to provide a mechanism for insurers to escape liability." *In re Farley*, 194 B.R. 553, 555 (Bankr.S.D.N.Y.1996). The same rationale applies to a retroactive modification of the discharge injunction under these circumstances. Even if the Plaintiff had been notified of the bankruptcy and had participated in the administration of the case, the Insurer could not have utilized the automatic stay nor the concomitant discharge injunction to shield itself from the prosecution of the state court litigation. The automatic stay would have lifted (just as it was subsequently annulled in this case) and the discharge injunction would have been modified so as to allow the determination of the Insurer's liability. Under these circumstances, when the plaintiff prosecuted the lawsuit in good faith because she had never been notified of the bankruptcy proceedings, the result cannot be different.

While the Insurer may dispute in another forum whether it had any duty to the Debtor, it cannot legitimately use the discharge defenses endowed upon a debtor by the Bankruptcy Code to shelter itself from liability. Thus, a third party, such as the Insurer in this case, cannot preclude the modification of the discharge injunction by a plaintiff when sought for the purpose of establishing a right of recovery against that insurer. Accordingly, this Court concludes that, to the extent that

the § 524 discharge injunction even needs to be modified at all under such circumstances, the Plaintiff's motion will be granted and the discharge injunction will be modified retroactively so as to validate the state court judgment issued against the Debtor, Kevin Schultz, on March 6, 1997 as it pertains to the recovery rights of the Plaintiff as against the Debtor's putative insurance carrier, Old American County Mutual Fire Insurance Company.

**B.** *Modification of Discharge Injunction to Establish the Personal Liability of Debtor.*

While the post-discharge state court judgment against the Debtor may be validated through the modification of the discharge injunction for the limited purpose of establishing the liability of a third-party insurance carrier, the validation of the state court judgment for the purpose of establishing the personal liability of the Debtor to the Plaintiff cannot be determined by this Court at this time.[7] One might easily conclude, from his support of the Plaintiff's Motion at the hearing, that this Debtor does not wish to avail himself of the protections offered by § 524. While it might seem plausible that the acquiescence of the Debtor to the Plaintiff's request should control the ultimate determination of this issue, it is clear that the provisions of the Bankruptcy Code dictate otherwise.

As we have seen, § 524(a) of the Bankruptcy Code protects a debtor

---

Debtor as to the existence of insurance coverage pertaining to the Plaintiff's claim against the Debtor. That issue will be adjudicated in a different forum and this Court expresses no opinion about whether any insurance coverage was actually in effect.

However, the Fifth Circuit's apparently conditional holding in *Edgeworth* may not actually be conditional at all. The parties to the current dispute may have a particular interest in the following statement by the Circuit in footnote 10 of the *Edgeworth* opinion:

Even if the insurance company denies coverage, the debtor will not be impermissibly burdened. If the insurance company is un-

willing to defend its insured, the debtor may simply default, knowing that the judgment will be unenforceable except as against the insurance company. *See Jet Florida*, 883 F.2d at 976. The judgment creditor may then litigate with the insurance company.

*Edgeworth*, 993 F.2d at 54.

**7.** While the personal liability of the Debtor would seem to be a critical issue, the Court must acknowledge that the term "validation" as utilized in the Plaintiff's motion is ambiguous and the scope of the Plaintiff's request may be subject to different interpretations.

against the commencement or continuation of litigation pertaining to a pre-petition debt and any judgment obtained on a pre-petition debt is declared void. Such substantial protections are not subject to waiver and thus do not dissipate at the whim or ignorance of the debtor. They arise and remain in effect "whether or not discharge of such debt is waived." Thus, under most circumstances, the Court would likely reject the Plaintiff's request for the validation of the state court judgment for the purpose of establishing the personal liability of the Debtor.

However, the protections offered under § 524(a) are dependent upon an application of § 727(b) to identify those debts that are actually discharged and thus subject to the § 524(a) protections.[8] § 727(b) states in relevant part, that:

> [E]xcept as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, ...whether or not a proof of claim based upon any such debt ...is filed under section 501 of this title, and whether or not a claim based on any such debt ... is allowed under section 502 of this title. (emphasis added).

Thus, for so long as there remains a possibility that a particular debt could be declared non-dischargeable under the provisions of § 523, the permanent applicability of the § 524(a) protections to such debt cannot be determined. Since the Plaintiff in this particular instance was never given notice of the Debtor's bankruptcy case, there is still a possibility that the Plaintiff could seek a declaration that the debt owing to her by the Debtor is non-dischargeable as an unscheduled debt pursuant to a complaint brought under 11 U.S.C. § 523(a)(3).[9] Accordingly, the request for the validation of the state court judgment for the purpose of establishing the personal liability of the Debtor to the Plaintiff is not ripe for determination and must be dismissed without prejudice.

## III. CONCLUSION

Based on the foregoing, the Court concludes that, pursuant to "Interim Order Annulling Automatic Stay and Requiring Written Submission Regarding Modification of Discharge Injunction" issued previously by this Court, the Plaintiff's motion will be granted in part and the discharge injunction will be modified retroactively so as to validate the state court judgment issued in favor of the Plaintiff, Eloisa Corpus, Individually and as Representative of the Estate of John Abel Corpus, Deceased, against the Debtor, Kevin Schultz, on March 6, 1997 as such judgment pertains to or affects the recovery rights of the Plaintiff as against the Debtor's putative insurance carrier, Old American County Mutual Fire Insurance Company. To the extent that the Plaintiff's motion requests validation of her state court judgment for the purpose of establishing the personal liability of the Debtor, such motion will be dismissed without prejudice to the rights of the Plaintiff to re-urge it at some future time.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[10] pursuant to FED. R. CIV.

---

**8.** § 524(a)(1) states that a discharge order only "...voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor *with respect to any debt discharged under section 727...of this title,* whether or not discharge of such debt is waived." (emphasis added). Similarly, the injunction under § 524(a)(2) utilizes the definition provided by (a)(1) and only arises to block any action to recover on "any such debt."

**9.** A complaint to determine the dischargeability of a debt under·§ 523(a)(3) may be filed at any time. See FED.R.BANKR.P. 4007(b).

**10.** To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

P. 52, as incorporated into contested matters in bankruptcy cases by FED. R. BANKR.P. 7052 and 9014. A separate order will be entered which is consistent with this opinion.