In re Anthony E. DANIELS, Debtor.

No. 03–17319–JDW.

United States Bankruptcy Court,
N.D. Mississippi,
Aberdeen Division.

May 2, 2013.

G. Todd Burwell, G. Todd Burwell, P.A., Ridgeland, MS, Selene D. Maddox, Maddox Law Office, Tupelo, MS, for Debtor.

## MEMORANDUM OPINION AND OR-DER (I.) GRANTING DEBTOR'S MOTION TO ENFORCE DIS-CHARGE INJUNCTION (DOC. 29) AND (II) DENYING CREDITOR'S RENEWED MOTION TO REIN-STATE (DOC. 36)

JASON D. WOODARD, Bankruptcy Judge.

This matter came before the Court for hearing on April 2, 2013, on the Motion to Modify and/or Enforce Discharge Injunction filed by Anthony E. Daniels (the "Debtor"), on February 21, 2013 (the "Motion") (Doc. 29), and the Response to the Motion and Renewed Motion to Reinstate filed on behalf of Carol and James Barton (the "Response" or "Renewed Motion to Reinstate") (Doc. 36). Appearing at the hearing were G. Todd Burwell, attorney for the Debtor, and John F. Hawkins, attorney for the Bartons, who are putative creditors of the Debtor. The Debtor also appeared and testified at the hearing. The Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334(b) and the United States District Court for the Northern District of Mississippi's Order Of Reference Dated August 6, 1984. This is a core proceeding arising under Title 11 of the United States Code as defined in 28

U.S.C. § 157(b)(2)(A) and (O). The Court in this matter must decide whether the discharge injunction prohibits the Bartons from pursuing their medical malpractice and related claims against the Debtor, nominally, in an effort to recover from his malpractice insurer, which is also in a liquidation proceeding of its own. The Court has considered the pleadings, the arguments of counsel, the testimony, the evidence admitted, and the law, and finds and concludes as follows.[1]

## I.  FINDINGS OF FACT

The Debtor is a physician who practices obstetrics and gynecology. On October 10, 2001, the Bartons filed a Complaint against the Debtor in the Circuit Court of Hinds County, Mississippi, alleging that the Debtor had committed malpractice in his care of Mrs. Barton during childbirth (the "State Court Action"). In January 2003, the Debtor's professional liability insurance carrier, Doctor's Insurance Reciprocal ("DIR") became insolvent and was placed in receivership in the Chancery Court of Davidson County, Tennessee (the "Receivership").[2] On November 17, 2003, the Debtor filed his petition for relief under chapter 7 of the Bankruptcy Code (Doc. 1).[3] The Bartons were listed as general unsecured creditors on the Debtor's Schedule F, and the Bartons' attorneys were listed as noticed parties. On November 26, 2003, the Debtor filed a Notice of Stay Pursuant to Bankruptcy in the State Court Action. On February 26, 2004, the Bartons filed a Motion for Relief from Stay with this Court, asking that the automatic stay be lifted for the limited purpose of allowing the Bartons to continue the State Court Action in order to establish liability on their respective claims, to liquidate the amount of damages, if any, and, if they prevailed, to collect on any available insurance proceeds (Doc. 9). The Debtor objected to the relief requested in the Motion for Relief from Stay, because DIR was not funding the Debtor's defense in the State Court Action due to the Receivership (Doc. 12). The Court set a hearing on the Motion for Relief from Stay for March 18, 2004, which hearing was continued to April 12, 2004 (Doc. 13). In the interim, the Court entered an Order Discharging Debtor on April 5, 2004 (Doc. 15).

Neither the Bartons nor any other party ever objected to the Debtor's discharge, nor did any party bring an action to declare any particular debt nondischargeable. At the April 12, 2004, hearing on the Motion for Relief from Stay, the Court held the Motion in abeyance and ordered counsel for the Bartons to submit a proposed order, but no proposed order was ever submitted. The Bartons filed a status report on February 1, 2006 (Doc. 21), but there was no further docket activity on the Motion for Relief from Stay, so the Court entered an Order Dismissing Motion for Relief from Stay on August 21, 2007 (Doc. 22).[4] The Debtor's bankruptcy case

---

1. This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent any of the findings of fact are considered conclusions of law, they are adopted as such. To the extent any of the conclusions of law are considered findings of fact, they are adopted as such.

2. Insurance companies are ineligible for bankruptcy protection. 11 U.S.C. § 109.

3. All statutory references and references to the Bankruptcy Code refer to Title 11 of the United States Code, unless otherwise noted.

4. In their Response, the Bartons contend that this order was entered without further notice to them or to their counsel. In fact, the Court's records show that phone messages requesting a status on the motion were left for

was closed on September 10, 2007 (Doc. 25). The case was reopened five and a half years later on February 20, 2013 (Doc. 28), when the Motion at issue was filed. The Debtor credibly testified that after receiving his discharge, he thought that since his bankruptcy case was complete and his pre-petition debts (including any alleged debt owed to the Bartons) were discharged, the State Court Action was effectively over. Again, the discharge was entered in 2004 and the bankruptcy case was closed in 2007. The Bartons do not dispute that the Debtor's personal liability on any debt arising out of the State Court Action was discharged in the Debtor's bankruptcy case and that the Bartons are barred from seeking to collect from the Debtor personally.

After his discharge was entered, the Debtor submitted a claim with the Receivership on August 30, 2004, seeking reimbursement of attorney fees and expenses previously incurred by him in the State Court Action. The Bartons also filed a claim with the Receivership on August 25, 2004. Subsequently, a deadline of August 15, 2011, was set in the Receivership for the liquidation of all claims against DIR (the "Claim Liquidation Deadline"), but the Debtor did not submit any additional claim because he legitimately believed the State Court Action to be terminated (i) because of his bankruptcy discharge entered over seven years prior, and (ii) there had apparently been no activity in the State Court Action during that seven-year period.

In April 2012, almost seven years after submitting his claim to the Receivership, the Receivership advised the Debtor that the Receivership had approved the bulk of his pre-Claim Liquidation Deadline attorneys' fees. However, the Receivership denied the Debtor's claim for liability coverage in the State Court Action, because the Bartons' claim was not liquidated in the State Court Action prior to the Claim Liquidation Deadline. The Bartons filed a Motion for Summary Judgment in the State Court Action on September 22, 2011, *after* the Claim Liquidation Deadline, but no hearing was set on that motion for over a year. A hearing on the Motion for Summary Judgment was held on December 18, 2012, where the Hinds County court ruled that the State Court Action stay was dissolved and the Bartons could proceed on the merits against the Debtor. The Debtor was also given additional time to respond to the Motion for Summary Judgment or file additional motions in the State Court Action. The order also provided that the Debtor preserved all defenses to that action related to his bankruptcy and the Receivership. Through counsel, the Debtor then contacted the Receivership regarding the payment of his defense costs going forward, and the Receivership again denied the request because of the passage of the Claims Liquidation Deadline. Accordingly, if the State Court Action is permitted to proceed, the costs of defense would be borne solely by the Debtor. The Debtor testified that his counsel requested a $25,000 retainer, not including required expert witness fees, in order to continue in the defense of the State Court Action. The Debtor also testified that he could not afford to pay these defense costs out of pocket.

The Debtor's deadline to file additional claims with the Receivership has passed, and no testimony or other evidence was presented regarding his ability to obtain an extension. In fact, the affidavit of

the Bartons' counsel on March 23, 2007, March 28, 2007, and August 20, 2007, but

these messages were unreturned.

Jeanne B. Bryant, who serves as the Special Deputy Receiver of DIR, provides that the Receivership estate would deny any request for payment of future defense expenses because it considers the matter closed, and would also deny any further indemnity request, as the Debtor's Claims Liquidation Deadline has passed.[5] Upon the Bartons' request, the Receivership granted the Bartons additional time to liquidate their claims against DIR.[6] The Bartons now have until July 5, 2013, to liquidate their claims against DIR, but the trial on the State Court Action is set in 2014, well past the Bartons' extended claims liquidation deadline. The Bartons cannot liquidate their claims through the State Court Action in time to meet the Receivership's extended deadline to do so, and the order extending the deadline provides that the Bartons "will be allowed no further extension of time to liquidate their claim and if not liquidated by that date, there claim will be denied as being unliquidated." Further, no such extension was granted to the Debtor. Accordingly, if the State Court Action is allowed to proceed, the Debtor will not be indemnified for any judgment entered against him.

## II. CONCLUSIONS OF LAW

■ The filing of a petition for relief under any chapter of the Bankruptcy Code operates as a stay of certain actions. 11 U.S.C. § 362(a). Typically, the actions

stayed are actions by creditors to recover from the debtor, property of the debtor, or property of the estate for a debt that arose prior to the petition date. The stay of an action against a debtor continues only until the earliest of the time the case is closed, the time the case is dismissed, or the time a discharge is granted. 11 U.S.C. § 362(c)(2). Accordingly, a debtor's discharge "will extinguish the § 362 automatic stay and substitute a § 524(a) permanent injunction." *Chapman v. Bituminous Ins. Co. (In re Coho Resources, Inc.)*, 345 F.3d 338, 344 n. 16 (5th Cir. 2003) (citations omitted).[7] Section 524 provides, in relevant part:

(a) a discharge in a case under this title—

. . .

(2) operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset any such [discharged] debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

. . .

(e) Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

---

5. Ms. Bryant's affidavit was admitted into evidence by the Debtor without objection, and both parties referred to and relied on the affidavit at the hearing.

6. It is unclear how the Bartons have a direct claim against the Receivership.

7. At the hearing, a Motion for Reinstatement on the Docket was admitted into evidence, file-stamped by the clerk of this Court on August 31, 2007. This motion requested that the Motion for Relief from Stay be reinstated. For some reason, this motion was never en-

tered into the Court's docket and was never considered by the Court, but no harm was caused by this oversight. The Motion for Relief from Stay was pending for over three years post-discharge, at a time when the § 362(a) stay had already been extinguished and replaced by the discharge injunction of § 524(a). Reinstating the Motion for Relief from Stay would have served no purpose as that motion became moot upon entry of the discharge. Accordingly, the Renewed Motion to Reinstate contained in the Bartons' Response is due to be denied.

The discharge injunction "protects a debtor from any subsequent action by a creditor whose claim has been discharged in a bankruptcy case." *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 53 (5th Cir.1993). However, a bankruptcy discharge "does not extinguish the debt itself, but merely releases the debtor from personal liability for the debt." *Id.* The debt may still be collected from any other liable entity. *Id.* (holding that "11 U.S.C. § 524(e) excludes the liability insurance carrier from the protection of bankruptcy discharge."). Most courts that have considered the issue have agreed that the general rule is that creditors may proceed nominally against a debtor in order to collect solely from an insurer.[8]

The Fifth Circuit Court of Appeals is once such court. In *Edgeworth*, the court held that the discharge injunction did not preclude an alleged medical malpractice creditor from pursuing her lawsuit against a physician debtor in order to establish liability and collect any judgment solely from the proceeds of the debtor's professional liability policy. In so holding, the court reasoned that an insurer should not be able to "escape its obligations based simply on the financial misfortunes of the insured." *Edgeworth*, 993 F.2d at 54 (cit-

ing *Jet Florida Systems*, 883 F.2d at 975). The court further held that allowing the continuation of the lawsuit did not "inequitably burden" the debtor, as the debtor's only burden would be the time required to participate in discovery or trial. *Edgeworth*, 993 F.2d at 54. The court premised its decision in part on the fact that the debtor did not allege either that he would be forced to pay for his own defense or that the insurance company denied coverage or would be defending under a reservation of rights, but the court cautioned that "[s]**uch threats to Edgeworth's pocketbook might require a different result under** § 524." *Id.* (emphasis added).[9]

In *Jet Florida Systems*, the Eleventh Circuit also considered whether or not a plaintiff could proceed against a discharged debtor in order to establish liability in order to recover from the debtor's insurance company. The Eleventh Circuit also held that such suits against a debtor nominally were permissible pursuant to § 524(e). 883 F.2d at 976. In *Jet Florida Systems*, the court affirmed the district court's reversal of the bankruptcy court's denial of a creditor's motion to vacate the discharge injunction to allow the creditor

---

8.  *See, e.g., Green v. Welsh*, 956 F.2d 30, 33 (2d Cir.1992); *Hendrix v. Page (In re Hendrix)*, 986 F.2d 195, 197 (7th Cir.1993); *Owaski v. Jet Florida Systems, Inc. (In re Jet Florida Systems, Inc.)*, 883 F.2d 970 (11th Cir.1989); *In re Hayden*, 477 B.R. 260, 265 (Bankr. N.D.Ga.2012); *In re Morris*, 430 B.R. 824 (Bankr.W.D.Tenn.2010); *In re Schultz*, 251 B.R. 823, 828 (Bankr.E.D.Tex.2000); *Wimmer v. Mann (In re Mann)*, 58 B.R. 953, 958 (Bankr.W.D.Va.1986). *Rowe v. Ford Motor Co.*, 34 B.R. 680 (M.D.Ala.1983); *Jessie v. Honosky (In re Honosky)*, 6 B.R. 667 (Bankr. S.D.W.Va.1980).

9.  The Tenth Circuit in *In re Walker*, 927 F.2d 1138 (10th Cir.1991) allowed a post-discharge suit to continue even though the debtor would incur legal expenses. However, in *Walker*,

liability had been determined pre-petition, and the only action left to be taken in the pre-petition proceeding was the entry of a final judgment. *Id.* at 1144. The *Walker* court also limited its holding to the facts before it, stating that *"[u]nder the circumstances of this case"* it would not deny the creditor the chance to proceed because the debtor "may thereby incur *some* legal expense." *Id.* (emphasis added). The Court finds that the factual circumstances in the instant case are distinguishable from those in the *Walker* case, because in this case, the Debtor's legal expenses would be significant, the professional costs to the Debtor should he not defend substantial, and, finally, because the Bartons would still be unable to recover from an insolvent insurer in the Receivership.

to bring a defamation suit against the debtor post-discharge for pre-petition actions alleged to have been committed by the debtor. In allowing the suit to proceed, the court opined that there was no prejudice to the debtor, because the "[d]ebtor and his property are not subject to any risk and maintenance of the suit does not frustrate the policy of the Bankruptcy Code in giving the [d]ebtor a fresh start in his economic life." *Id.* at 974 (citing *Wimmer v. Mann (In re Mann)*, 58 B.R. 953, 958 (Bankr.W.D.Va.1986)). Although the *Jet Florida Systems* court expressed concern that its decision might "frustrate the fresh-start policy embodied in the [Bankruptcy] Code ... by requiring the bankrupt to spend sums in defending [the] lawsuit," it allowed the defamation action to proceed for two reasons. First, the court could not determine whether the debtor or the insurance company would pay the costs of the litigation, and second, the economics of the situation incentivized the insurance company to provide a defense. *Jet Florida Systems*, 883 F.2d at 976. The court therefore concluded that "the *possibility* that the debtor [would] be responsible to pay any amount associated with defending [the] action is *so remote* that the fresh-start policy is simply not defeated." *Id.* (emphasis added).

■ In this case, it is not a possibility that the Debtor would have to pay the costs of defense; it is a certainty. This difference is significant and contributes to a different result in this case. *See Edgeworth*, 993 F.2d at 54 ("Such threats to [a debtor's] pocketbook might require a different result under § 524"); *see also Greiner v. Columbia Gas Transmission Corp. (In re Columbia Gas Transmission Corp.)*, 219 B.R. 716 (S.D.W.Va.1998) (holding that an automobile accident victim could not proceed against a debtor solely for the limited purposes of establishing liability and recovering from the debtor's insurer where the debtor and not the insurer would be liable for defense of the suit). The *Columbia Gas* court also cited with approval a Massachusetts district court case, in which that court held that "[a]ny economic loss to the [d]ebtor would ... result in the violation of the statutory injunction of 11 U.S.C. § 524(a)." *Id.* (citing *Perez v. Cumberland Farms, Inc.*, 213 B.R. 622, 624 (D.Mass.1997)). Typically, an insurance company is compelled to defend an insured debtor, because the insurance company is responsible to do so pursuant to its contract with the debtor and to avoid payment of a default judgment. *Jet Florida Systems*, 883 F.2d at 974. Such incentives are not present in the instant case. The Debtor's insurer, DIR, is insolvent, no longer exists, and cannot indemnify the Debtor. Not only does DIR have no incentive or ability to defend this case, the Receivership has made it clear that it will not indemnify the Debtor nor defend the State Court Action on the Debtor's behalf.

■ The general rule is that the discharge injunction will not bar a creditor from pursuing a debtor nominally in order to collect from a third party. *See* 11 U.S.C. 524(e); *Edgeworth*, 993 F.2d 51. This general principle is clear, and it is fair. A third party should not be allowed to "escape its obligations" simply because another party filed bankruptcy. *Edgeworth*, 993 F.2d at 54, *citing Jet Florida Systems*, 883 F.2d at 975. Only in a rare and unique case should courts depart from the general rule, although the Fifth Circuit foresaw that exceptions to the general rule might exist. *Edgeworth*, 993 F.2d at 54 ("threats to [a debtor's] pocketbook might require a different result under § 524"). This is one of those rare cases where the procedural postures of the State Court Action and the Receivership and the estab-

lished unavailability of a third-party source of recovery lead to a departure from the general rule. In this case, should the Court allow the State Court Action to move forward, not only would the Debtor certainly bear the cost of defense, the Receivership has denied liability indemnity coverage as well, so there is no third party from whom the Bartons may recover. Continuing the lawsuit against the Debtor, even nominally, would be an exercise in futility. If no third party recovery is available, then a lawsuit on a discharged debt may not proceed against a debtor, even nominally. *See, e.g., Walker*, 927 F.2d at 1142 (holding that § 524 permits a lawsuit against a discharged debtor only if establishment of the debtor's liability is a "prerequisite to recovery from another entity"). Even if the Bartons prevailed in the State Court Action, they could not recover from the Debtor because of the discharge injunction (which they admit), nor could they recover from DIR because of its insolvency and the Receivership's claim denials. Because of the Receivership's decision, and its deadlines, the State Court Action is now a case in which there is no third party from whom the Bartons may recover.

Finally, the Debtor testified that he was not interested in settling the State Court Action in order to offer a liquidated claim to the Receivership for consideration, because he believes he did nothing wrong and the case is without merit. For the same reason, the suggestion that a debtor forced to fund his own defense could simply default, knowing that the judgment would be unenforceable against him (*Edgeworth*, 993 F.2d at 54, n. 10), is untenable in this particular situation. The Debtor credibly testified that a judgment against him would not only cause his malpractice insurance rates to increase,[10] but would also cause significant problems for him in his ability to earn a living and future employment, as a judgment or settlement would have to be reported to any hospitals at which he seeks or has privileges, as well as to any potential employer. The Court finds and concludes that it would be a violation of the discharge injunction, and impermissibly frustrate the Debtor's "fresh start," to require him to either fund the expensive defense of a pre-petition cause of action or default and face significant employment hurdles, all on account of a discharged, pre-petition debt. The equities of this situation also favor this outcome, because allowing the State Court Action to proceed against the Debtor would cause significant harm to the Debtor, while ultimately yielding no benefit to the Bartons.

### III. CONCLUSION

The unique facts and circumstances of this case dictate a departure from the general rule. Where there can ultimately be no recovery from a third party, and where the Debtor would be forced to fund the defense of the litigation that might ultimately lead to such a toothless judgment, the discharge injunction bars further prosecution of the litigation. Debtor's Motion to Enforce the Discharge Injunction is due

---

10. The *Edgeworth* court rejected that debtor's argument that a suit pursued against the debtor nominally would impermissibly harm the debtor by causing his post-bankruptcy insurance premiums to be higher, finding in a footnote that any higher premiums would result not from any recovery against the insurance policy, but rather from the debtor's actions. *Edgeworth*, 993 F.2d at 54 and n. 8.

The facts in *Edgeworth* are distinguishable from the facts in this case, because the Debtor cannot afford to pay the defense costs, but vehemently disputes the Bartons' allegations. Further, the Debtor has testified that other substantial harm to his future economic and employment prospects would result from allowing a default malpractice judgment to be entered against him.

to be granted, and the Bartons' Renewed Motion to Reinstate should be denied. Accordingly, it is hereby

**ORDERED, ADJUDGED AND DECREED** that the

1. Debtor's Motion is **GRANTED.** The discharge injunction prohibits the Bartons from continuing the State Court Action against the Debtor, even nominally.

2. The Bartons' Renewed Motion to Reinstate is **DENIED** as moot.