# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 45450

KERMIT JACKSON,

      Plaintiff-Appellant,

v.

JENNIFER CROW,

      Defendant-Respondent.

)
)
)
)
)
)
)
)
)

**Boise, November 2018 Term**

**Filed: March 4, 2019**

**Karel A. Lehrman, Clerk**

_____

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Nancy A. Baskin, District Judge.

Judgment of the district court <u>vacated</u> and <u>remanded.</u>

Seiniger Law, Boise, for appellant. William Breck Seiniger, Jr. argued.

Elam & Burke, P.A, Boise, for respondent. Joshua S. Evett argued.

_____

BURDICK, Chief Justice.

In Ada County during 2010, Kermit Jackson ("Jackson") filed a complaint against Jennifer J. Crow ("Crow") arising from a 2008 automobile collision. No substantive action took place in the trial court until 2016 when Crow moved for summary judgment.

In the interim, Crow filed for bankruptcy in 2014 listing Jackson as a potential unsecured creditor with a claim of unknown value. Jackson filed a proof of claim with the bankruptcy court and eventually received his pro rata share of the distribution of Crow's assets. Crow received a bankruptcy discharge in 2014, releasing her from personal liability on the claim. Afterwards, Jackson proposed to move forward with this case against Crow as a nominal defendant, seeking to secure a judgment in order to recover from Crow's insurer, rather than Crow personally.

Crow's motion for summary judgment argued that: (1) allowing Jackson's case to go forward against her violates the permanent discharge injunction of 11 U.S.C. §§ 524 and 727; (2) even if this procedure does not violate the Bankruptcy Code's permanent injunction, naming her as a nominal defendant is (a) not permitted by Idaho case law, the Idaho Rules of Civil

1

Procedure, and Idaho's no-direct-action rule, and (b) violates the Bankruptcy Code's policy of providing her a financial "fresh start."

In a case of first impression, the district court ruled in favor of Crow, reasoning that allowing the case to proceed against Crow would violate 11 U.S.C. § 524 by impermissibly causing negative economic consequences for Crow. The district court further reasoned that allowing Jackson to proceed directly against Crow's insurer would violate the no-direct-action rule and permitting Jackson to proceed against Crow nominally was not permitted by the Idaho Rules of Civil Procedure or this Court's precedent. Jackson moved the district court to reconsider, but his motion was denied. Jackson timely appeals. We vacate and remand for further proceedings.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

This case stems from an automobile collision on October 5, 2008, near what is now Kristin Armstrong Municipal Park in Boise, Idaho. The collision occurred while Jackson was operating a tractor with an attached lawn vacuum while working for the City of Boise. Crow was operating a personal motor vehicle.

Nearly two years after the collision, on August 5, 2010, Jackson filed a complaint in Ada County district court alleging that Crow's negligence was the cause of the collision and personal injuries. After the summons and complaint were served on Crow, she filed an answer and demand for jury trial. The matter was set for a jury trial to begin on April 9, 2012.

The 2012 trial date was continued in order to allow Crow to file a motion to exclude evidence of Jackson's workers' compensation claim. Jackson then filed a motion to substitute the City of Boise as the real party in interest. Granting Crow's motion to exclude and denying Jackson's motion to substitute, the district court again set the matter for trial—this time to take place in September 2013.

Before the 2013 trial date, Crow filed a motion to continue the trial setting on the basis that Jackson had filed for bankruptcy. Jackson had, in fact, filed for bankruptcy a few months prior to Crow's motion, but never filed a notice with the district court. The matter was stayed for three-and-a-half months after which Jackson joined Crow's motion to continue the trial. The trial court entered an order on June 10, 2013, vacating the trial date. Crow's motion would be the last filing in the case for a period of nearly three years.

2

Before Jackson received a bankruptcy discharge on June 4, 2013, the bankruptcy trustee, with the bankruptcy court's approval, hired Jackson's counsel in this case to pursue the negligence claim on behalf of the bankruptcy estate. However, Jackson's counsel did not pursue the claim during the bankruptcy and the bankruptcy trustee eventually abandoned the claim which reverted back to Jackson.

Six months after Jackson's bankruptcy discharge, Crow also filed for bankruptcy. Like Jackson, Crow did not file a notice of bankruptcy filing with the district court. Crow's bankruptcy filing listed Jackson as a potential unsecured creditor with a claim of unknown value. Jackson filed a proof of claim in Crow's bankruptcy, valuing the claim at $120,000, but, after a request from the bankruptcy trustee for a more definite valuation, Jackson filed an amended proof of claim valuing the claim at $61,018.56. The trustee accepted the amended valuation. Crow received her bankruptcy discharge in April of 2014 and the trustee's final report was filed in September 2015. The discharge included Crow's personal liability relating to the August 5, 2008, automobile collision with Jackson. In 2016, Jackson received his pro rata distribution of the bankruptcy estate's assets in the amount of $1,932.45.

In May 2016, Jackson requested a status conference with the trial court. Objecting, Crow argued that Jackson's claim against her had been discharged in bankruptcy. Despite the objection, the district court set a jury trial for January 2017. Crow then filed an amended answer and demand for jury trial. The trial was reset for June 5, 2017.

On September 30, 2016, Crow filed a motion for summary judgment in which she argued that: (1) allowing Jackson's case to go forward against her would violate the permanent discharge injunction of 11 U.S.C. §§ 524 and 727; (2) even if this procedure would not violate the Bankruptcy Code's permanent injunction, naming her as a nominal defendant was (a) not permitted by Idaho case law, the Idaho Rules of Civil Procedure, and Idaho's no-direct-action rule, and (b) would violate the Bankruptcy Code's policy of providing her a financial "fresh start"; (3) judicial estoppel barred Jackson's lawsuit; and (4) the doctrine of laches barred Jackson's lawsuit.

Jackson filed his own motion for summary judgment on February 1, 2017, arguing that he was entitled to summary judgment on the following issues: (1) causation, because Crow's negligence was the sole cause of the collision; (2) negligence per se, because its elements were satisfied and no valid excuse existed; (3) liability, because there was no genuine issue of material

3

fact regarding the proximate cause of the collision; and (4) the issues raised in Crow's motion for summary judgment.

After a hearing on the summary judgment motions, the district court issued a memorandum decision and order granting Crow's motion for summary judgment on April 13, 2017, holding that: (1) the Bankruptcy Code's permanent injunction barred Jackson's lawsuit; (2) the Bankruptcy Code's goal of providing a financial fresh start to debtor would be violated by allowing the claim to proceed; (3) allowing the suit against Crow's insurer would violate Idaho's no-direct-action rule; and (4) no case law or rule permitted Jackson to proceed against Crow nominally. Concluding that granting Crow's motion for summary judgment was dispositive of the case, the district court did not reach the issues of judicial estoppel and laches, and deemed Jackson's motion for summary judgment moot.

In its memorandum decision, the district court acknowledged that many federal courts allow suits such as Jackson's to proceed, but distinguished it by stating that many of these jurisdictions have "mechanisms for recovery against an insurer after a judgment has been obtained against the insured." In contrast, the district court was "aware of no mechanism under Idaho law for suing a defendant 'nominally' and then enforcing the judgment against the defendant's insurer . . . to collect on the judgment." The district court concluded that the case Jackson relied on as providing authority for the use of nominal defendants, *Pigg v. Brockman*, 79 Idaho 233, 314 P.2d 609 (1957), was factually distinguishable because the *Pigg* decision was based on a contractual provision in the insurance contract that allowed for suit after obtaining a judgment against the insured. Because neither party represented that Crow's policy included such a provision, the district court could not rule on the issue. Lastly, the district court reasoned that allowing the case to proceed against Crow nominally would result in negative economic consequences affecting her financial "fresh start" under the Bankruptcy Code. These consequences were: (1) Crow would have to pay a deductible; (2) a judgment could have a negative impact on Crow for purposes of explanation to future employers or creditors; and (3) a judgment could also affect Crow's credit rating.

In his motion for reconsideration and motion to strike filed the following day, Jackson argued: (1) there was no evidence that any deductible would apply to Crow, and (2) he had requested the insurance policy from Crow twice but never received it. Jackson also filed a stipulation that if Crow should have to pay any deductible, she may have a credit for it against

4

any future judgment entered against her. Basing his motion to strike on the district court's ruling that the judgment may harm Crow's credit score and affect her employment prospects, Jackson argued these findings were based upon a letter sent from Jackson's counsel to Crow's counsel. Jackson argued that this letter, which Crow had included as an exhibit in her motion for summary judgment, was protected by Idaho Rule of Evidence 408 as a statement made in the context of settlement negotiations. Crow argued that Jackson had missed his opportunity to object on this matter.

The district court issued an order directing Crow to file a copy of her complete insurance policy. The district court also ordered the parties to file supplemental briefing as to how the policy affected the district court's analysis under *Pigg*. Crow filed the insurance policy and both parties filed supplemental memoranda on the issue.

On August 31, 2017, the district court issued an order denying Jackson's motion to reconsider and motion to strike. In doing so, the district court incorporated its previous memorandum decision, but also found: (1) Crow's policy did not create any rights for Jackson to join the insurance company as a party in order to sue the insurer directly; (2) *Pigg* was not applicable or binding; (3) the district court had no legal authority to enter a judgment against Crow nominally under the Idaho Rules of Civil Procedure; and (4) it would be "unfair and prejudicial for a judgment to be entered against Crow in any capacity because Jackson failed to pursue the action during the pendency of Crow's bankruptcy."

Jackson timely appealed.

## II. ISSUES ON APPEAL

1. Did the district court err in determining that Jackson could not proceed by naming Crow as a nominal defendant in order to recover from her insurer?

2. Can Crow's insurer or Crow's insurance policy be joined as a defendant?

3. Is Jackson is entitled to summary judgment on the record?

## III. STANDARD OF REVIEW

In this case, Jackson appeals both (A) the district court's grant of Crow's motion for summary judgment and (B) the district court's denial of the Jackson's motion for reconsideration.

## A. Summary Judgment

"In an appeal from an order of summary judgment, this Court's standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment." *Lockheed Martin Corp. v. Idaho State Tax Comm'n*, 142 Idaho 790, 793, 134 P.3d 641, 644 (2006). "Summary judgment is proper when there is no genuine issue of material fact and the only remaining questions are questions of law." *Chandler v. Hayden*, 147 Idaho 765, 768, 215 P.3d 485, 488 (2009). "This Court liberally construes all disputed facts in favor of the nonmoving party and draws all reasonable inferences and conclusions supported by the record in favor of the party opposing the motion." *Id.* (citing *Lockheed Martin Corp.*, 142 Idaho at 793, 134 P.3d at 644).

## B. Motion for Reconsideration.

On a motion for reconsideration, the district court "must consider any new admissible evidence or authority bearing on the correctness of an interlocutory order . . . . [But the motion] need not be supported by any new evidence or authority." *Fragnella v. Petrovich*, 153 Idaho 266, 276, 281 P.3d 103, 113 (2012) (citing *PHH Mortg. Servs. Corp. v. Perreira*, 146 Idaho 631, 635, 200 P.3d 1180, 1184 (2009)).

> When deciding the motion for reconsideration, the district court must apply the same standard of review that the court applied when deciding the original order that is being reconsidered. . . . Likewise, when reviewing a trial court's decision to grant or deny a motion for reconsideration, this Court utilizes the same standard of review used by the lower court in deciding the motion for reconsideration.

*Id.* Here, the trial court was asked to reconsider the granting of a motion for summary judgment, so the summary judgment standard applied to the trial court deciding the motion for reconsideration and now applies to our review of that decision on appeal. *Id.*

"[W]hen the district court grants summary judgment and then denies a motion for reconsideration, this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment." *Idaho First Bank v. Bridges*, 164 Idaho 178, 186, 426 P.3d 1278, 1286 (2018) (quoting *Massey v. Conagra Foods, Inc.*, 156 Idaho 476, 480, 328 P.3d 456, 460 (2014)).

For both motions, "[i]f the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review." *Brooks v. Wal-Mart*

6

*Stores, Inc.*, 164 Idaho 22, 27, 423 P.3d 443, 448 (2018) (quoting *Lockheed Martin Corp.*, 142 Idaho at 793, 134 P.3d at 644).

## IV.    ANALYSIS

**A. The district court erred in granting Crow's motion for summary judgment.**

The parties disagree about the scope of Jackson's suit. As a debtor whose personal liability has been discharged by a bankruptcy court, Crow argues that any legal action attempting to recover from her violates the Bankruptcy Code's permanent injunction under 11 U.S.C. § 524(a)(2).[1] Maintaining that his lawsuit's purpose is not to recover from Crow personally, Jackson argues that federal courts read the Bankruptcy Code to permit state-court actions naming discharged debtors as nominal defendants when doing so is a prerequisite to recovery from a third party liable for the debt. The district court ruled that such an action is permitted under federal law, but is nevertheless blocked by Idaho's no-direct-action rule. Each part of this ruling will be discussed in turn.

1. <u>The district court correctly ruled that maintaining a case against a discharged debtor nominally is permitted under the Bankruptcy Code's permanent injunction.</u>

The moment a debtor files for bankruptcy, the Bankruptcy Code imposes an automatic stay on any action against the debtor "that was or could have been commenced before" the bankruptcy proceeding began. 11 U.S.C. § 362(a)(1). Once Crow's bankruptcy was adjudicated and the Bankruptcy Court entered a discharge, the automatic stay was replaced by "a permanent injunction against litigation for the purpose of collecting a debt from the debtor or the debtor's property." *In re Hayden*, 477 B.R. 260, 264 (Bankr. N.D. Ga. 2012) (citing 11 U.S.C. § 727(b)). The scope of the permanent injunction is set by 11 U.S.C. § 524(a)(2) which states:

(a) A discharge in a case under this title . . .

> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . .

In certain respects, Crow is correct that 11 U.S.C. § 524(a)(2) is an absolute defense with the purpose of protecting "the debtor from having to put on a defense in an improvident state court action or otherwise suffer the costs, expense and burden of collection activity on discharged debts." *In re Eastlick*, 349 B.R. 216, 229 (Bankr. D. Idaho 2004). But Crow

---

[1] All references to the Bankruptcy Code are to 11 U.S.C. §§ 101–1330.

overextends section 524(a)(2)'s protection to this case given the applicability of section 524(e), which provides:

> (e) Except as provided in [a subsection dealing with pursuing debtor's assets in a community property state when only one spouse files for bankruptcy], discharge of a debt of the debtor *does not affect the liability of any other entity* on, or the property of any other entity for, such debt.

11 U.S.C. § 524(e) (emphasis added). According to Jackson, this provision expressly provides that the liability of Crow's insurance company for the debt has not been discharged. Therefore, he contends that his attempt to pursue Crow as a prerequisite to recovering from her insurer is not barred by the Bankruptcy Code's permanent injunction. The federal courts are nearly in unanimous agreement with Jackson. *See, e.g.*, *Beeney v. Beeney (In re Beeney)*, 142 B.R. 360, 363 (B.A.P. 9th Cir. 1992) (listing cases); *In re Jason Pharm., Inc.*, 224 B.R. 315, 322–23 (Bankr. D. Md. 1998) (listing cases); *Reyes v. McCarley*, 107 P.3d 1137, 1139 (Colo. App. 2004) (listing cases).

In reconciling subsection 524(a)(2) and subsection 524(e), federal courts make clear that the permanent injunction prevents collection from a debtor but not from a liable third party: "Subsection (a) enjoins creditors from attempting to collect from the debtor or the debtor's assets debts that have been discharged in bankruptcy. Subsection (e) makes clear that this injunction applies only to the debtor's personal liability and does not inhibit collection efforts against other entities." *In re Beeney*, 142 B.R. at 362. The interplay between these subsections evinces a congressional intent to permit suits against a debtor if necessary to recover from a third party:

> The provisions of 524(a) apply only with respect to the personal liability of the debtor. When it is necessary to commence or continue a suit against a debtor in order, for example, to establish liability of another, perhaps a surety, such suit would not be barred. Section 524(e) was intended for the benefit of the debtor but was not meant to affect the liability of third parties or to prevent establishing such liability through whatever means required.

*In re Doar*, 234 B.R. 203, 205 (Bankr. N.D. Ga. 1999) (citing 3 *Collier on Bankruptcy* ¶ 524.01 at 524–16 (15th ed. 1987). Accordingly, "[a]though § 524(a)(2) prohibits actions brought to collect a discharged debt from the debtor, it permits suits—even those brought to collect on debts a debtor has discharged—that formally name the debtor as a defendant but are brought to collect from a third party." *In re Paul*, 534 F.3d 1303, 1307 (10th Cir. 2008) (emphasis added) (citing *In re W. Real Estate Fund, Inc.*, 922 F.2d 592, 601 (10th Cir.1990)).

As applied to the facts in this case, "[b]ankruptcy law is clear and nearly unanimous that § 524(e) does not prevent a creditor from maintaining a debtor, nominally, in a state court action for the purposes of establishing liability as a prerequisite to proceeding against a debtor's liability insurer." *In re Doar*, 234 B.R. at 204. But courts are quick to caution that such proceedings must not result in negative economic consequences for the debtor because the "discharge and the concomitant injunction . . . are designed to give the debtor a financial 'fresh start.'" *In re Jet Fla. Sys., Inc.*, 883 F.2d 970, 972 (11th Cir. 1989) (citing Thomas H. Jackson, *The Fresh-Start Policy in Bankruptcy Law*, 98 Harv. L. Rev. 1393, 1396–97 (1985)). For purposes of this opinion, the fact that federal courts recognize that suits may be brought against the discharged debtor as a prerequisite to recovery from the debtor's insurer will be referred to as the "§ 524(e) Exception."

In *In re Beeney*, a plaintiff asked a bankruptcy court to reopen a defendant-debtor's bankruptcy so the plaintiff could pursue a prepetition state-court action to recover from the debtor's insurer. 142 B.R. at 361. The bankruptcy court held that a debtor's bankruptcy could not be reopened to permit the suit. *Id.* Reversing, the Ninth Circuit Bankruptcy Appellate Panel held, as a matter of law, that the plaintiff could pursue the litigation against the debtor "so long as he does not intend to enforce any judgment against [the debtor] or his property." *Id.* at 363.

*In re Beeney* involved an automobile accident that occurred before the defendant filed for a no-asset Chapter 7 bankruptcy. *Id.* at 361. Having received notice that he did not need to file a claim, the plaintiff neither filed a claim nor sought a modification of the automatic stay to sue the debtor. *Id.* However, after the defendant's discharge, the plaintiff did seek a modification of the permanent injunction to proceed against the defendant in state court to establish liability. *Id.* Plaintiff argued this suit was necessary because California "does not have a direct action statute that would allow [the plaintiff] to pursue the insurance policy directly." *Id.* Denying plaintiff's motion, the lower court reasoned that plaintiff could have sought relief from the stay while the case was open and did not provide an explanation for his failure to do so. *Id.* Plaintiff appealed. *Id.*

Reversing the bankruptcy court, the Bankruptcy Appellate Panel detailed a case where the plaintiff was allowed to proceed under similar facts—*Green v. Welsh*, 956 F.2d 30 (2d Cir. 1992). *Id.* at 362. The panel paraphrased the *Green* court's reasoning as: (1) "§ 524(e) provides that the debtor's discharge does not apply to other entities"; (2) the "debtor's 'fresh start' would

9

not be impeded by allowing the litigation to continue because the debtor could simply allow a default to be taken"; and (3) "insurers should not receive a windfall from the debtor's bankruptcy or the claimant's failure to obtain relief from the stay prior to entry of the debtor's discharge." *Id.* at 362 (citing *Green*, 956 F.2d at 30).

The *In re Beeney* panel found the *Green* court's rationale persuasive. First, the panel held that "the vast weight of authority supports" allowing plaintiff to proceed with her claim. *Id.* at 363. Second, it "would not be in accordance with sound public policy to deem a discharge in bankruptcy as releasing an insurance company from liability under a policy which the law requires every automobile driver to carry for the protection of the public." *Id.* Lastly, the debtor's argument that state-court litigation would violate his "fresh start" was too tenuous to override the policy in favor of allowing the suit. *Id.* Allowing the post-discharge suit would not result in any consequences that would not have been present if the plaintiff obtained leave to pursue the claim during the bankruptcy. *Id.*

We adopt the analysis advanced in *In re Beeney*. Therefore, Jackson's litigation is permissible so long as he does not intend to enforce any judgment against Crow or her property. *Id.* Jackson has stipulated to that point on appeal and tried to amend his complaint to that effect in the trial court.

2. The district court misapplied the no-direct-action rule in this case.

The district court correctly recognized that the § 524(e) Exception would allow Jackson's case to proceed, but nevertheless determined that the suit runs afoul of Idaho's no-direct-action rule. First, the district court interpreted Crow's contract to prohibit suits against the insurer. Second, the district court determined that while the § 524(e) Exception would allow Jackson's case to go forward under the Bankruptcy Code, Idaho's no-direct-action rule barred it from proceeding. We disagree.

In Idaho, the no-direct-action rule is well established and has been upheld under various factual circumstances. *Graham v. State Farm Mut. Auto. Ins. Co.*, 138 Idaho 611, 613, 67 P.3d 90, 92 (2003) (listing cases). In *Pocatello Industrial Park Co. v. Steel West, Inc.*, this Court articulated the no-direct-action rule by saying: "It is well established that absent a contractual or statutory provision authorizing the action, an insurance carrier cannot be sued directly and cannot be joined as a party defendant." 101 Idaho 783, 791, 621 P.2d 399, 407 (1980).

10

In *Pocatello Industrial Park Co.*, a landlord sued a tenant's insurer for injuries suffered by the tenant's employee while he was on the premises. *Id.* at 785, 621 P.2d at 401. The trial court granted summary judgment in favor of the tenant and his insurer. *Id.* This Court reversed, holding, in part, that the landlord did not have a direct cause of action against the tenant's insurer. *Id.* at 791, 621 P.2d at 407. Because the tenant's insurer's policy "specifically prohibits direct action against the insurance company," and no statutory authority for the suit existed, the no-direct-action rule barred the action. *Id.* Therefore, the landlord could not "maintain an action against [tenant's insurer] at this stage of the controversy." *Id.*

Here, Crow's policy provides authorization, but it is conditioned on satisfying the prerequisite of obtaining a judgment against her. The policy provides:

> **Legal Action Against Us**
>
> We may not be sued unless there is full compliance with all the terms of this policy. We may not be sued under the Liability Coverage *until the obligation of a person we insure to pay is finally determined either by judgment against that person* at the actual trial or by written agreement of that person, the claimant and us.

The district court concluded that this language did not allow for direct action against the insurer:

> This language in the policy does not require an insurance company to pay unless judgment has been entered against the insured or a settlement is reached which is agreed to by the insurance company. This language does not provide that a third party can bring suit against the insurance company directly.

The district court's analysis is too narrow. This language does allow for direct suit against the insurer—just not at this stage of the proceedings. By its plain terms, the provision allows for direct actions against the insurer once a third-party claimant obtains a judgment against the insured. Therefore, in order to pursue a direct action against Crow's insurer, Jackson must first win a judgment against Crow. This interpretation of the provision is supported by this Court's precedent[2] and a leading insurance-law treatise[3].

---

[2] *See, e.g.*, *Pigg v. Brockman*, 79 Idaho 233, 245, 314 P.2d 609, 616 (1957) (interpreting substantially similar language to provide that "the insurer cannot be sued until the amount of liability has been determined in an action against the insured."); *Stearns v. Graves*, 61 Idaho 232, 99 P.2d 955, 958–59 (1940) (interpreting a substantially similar provision in a contract to "make[] it a condition precedent to the commencement of an action against the [insurer] that the amount of any claim or loss shall first be fixed and rendered certain . . . by judgment against the insured . . . .")

[3] COUCH ON INSURANCE has the following to say about such provisions:

> The fact that a judgment against the insured is a condition precedent to a direct action against the liability insurer may be stated affirmatively, to the effect that a right of direct action will exist after

Under Crow's insurance policy, recovery from the insurer is a two-step process. Step 1 is a direct action against the insured in order to obtain a judgment. Step 2 is obtaining recovery against the insurer by direct action should it fail to pay the judgment. No direct action against the insurer is permitted at Step 1—the prerequisite to contractual authorization has not yet been met, so it remains barred by the no-direct-action rule. The judgment obtained in Step 1 satisfies the condition of the insurance contract, thereby making a direct action against the insurer permissible in Step 2. If the steps are completed in order, then the no-direct-action rule does not bar the suit. But the no-direct-action rule will bar a litigant attempting to skip Step 1.

This litigation is still in Step 1. Jackson, as permitted by the § 524(e) Exception, is pursuing Crow directly, but has made it clear that he will not attempt to enforce any judgment entered except as against Crow's insurance company. Because Crow's policy permits suit against Crow's insurer once judgment has been obtained against Crow, the district court's conclusion that Idaho's no-direct-action rule bars application of the § 524(e) Exception is misplaced. The no-direct-action rule bars Jackson from skipping Step 1, but not from completing Step 1.

Our approach is consistent with other jurisdictions that have recognized the dilemma created by the federal bankruptcy permanent injunction and a state's no-direct-action rule. A bankruptcy court aptly described how the § 524(e) Exception is the solution to this dilemma when it was confronted with Missouri's no-direct-action law:

> The circumstances described in this matter have illustrated a problem that may arise when a federal statute that is intended to provide uniform relief to all eligible persons, produces an unwelcome consequence when applied to a situation that is subject to state law requirements. If Section 524(e) bars the Movant from obtaining a personal judgment against the Debtor, state law will almost certainly prevent her from obtaining a judgment against the insurance company. This result is not consistent with the specifically defined injunctive relief of the bankruptcy discharge.
>
> However, by recognizing this limited exclusion from the broad sweep of the discharge injunction, (1) an allegedly aggrieved party will be allowed to

---

the entry of such judgment, or negatively, to the effect that no action may be brought against the insurer until a judgment has been entered against the insured. Such difference in terminology is not significant, and in either case, no action may be brought against the insurer before judgment is entered against the insured. The basic purpose of such a "no-action" clause is to avoid joinder of the insurance company by the insured in a damage action against the insured and to prevent suit against the insurer by the injured person or the insured until the damages have been fixed by final judgment after trial of that action or by proper agreement.

7A Steven Plitt et al., Couch on Insurance § 105:14 (3d ed. 2018 update).

12

prosecute a claim against a non-debtor third-party; (2) a debtor will continue to be protected from the obligation to satisfy any personal liability that may result from the aggrieved party's actions; and (3) the insurance company will suffer no exposure greater than what it had agreed to in the insurance contract with a debtor. Any judgment against a debtor obtained in these circumstances is unenforceable against the Debtor by virtue of the Order of Discharge.

In order to give enforceability and life to Section 524(e) under the circumstances of this case, the bankruptcy injunction should not prevent this Movant from establishing the Debtor's liability so that the Movant may proceed against the insurance company.

*In re Christian*, 180 B.R. 548, 549 (Bankr. E.D. Mo. 1995).

Here, the prerequisite of obtaining a judgment against the insured is a contractual, rather than statutory, requirement, but the result is the same. Because Crow's policy contractually authorizes suit against the insurer after judgment is obtained against the insured, Idaho's no-direct-action rule does not bar application of the § 524(e) Exception in this case. The next question is whether the § 524(e) Exception's nominal-party framework is permissible under Idaho case law and the Idaho Rules of Civil Procedure.

3. <u>The district court erred in concluding that the nominal-party framework is not permitted by Idaho law.</u>

Having concluded the no-direct-action rule does not apply at this juncture, the question becomes whether Jackson may sue Crow nominally under Idaho law. The district found that Idaho law did not allow for nominal defendants, stating that it was "aware of no mechanism under Idaho law for suing a defendant 'nominally' and then enforcing the judgment against the defendant's insurer or bringing an action against the defendants' insurer to collect on the judgment." To the extent that the nominal-party framework was allowed by this Court in *Pigg v. Brockman*, 79 Idaho 233, 314 P.2d 609 (1957), the district court held the case was "not applicable or binding" and "was decided well before the Supreme Court first recognized the no-direct-action rule."

In contrast, Jackson argues that this Court has recognized and endorsed the use of nominal parties in *Pigg*. 79 Idaho at 245, 314 P.2d at 616. Jackson also argues the same procedure is implicitly sanctioned in *Farmers Insurance Group v. Reed*, 109 Idaho 849, 853, 712 P.2d 550, 554 (1985). Crow argues that such a procedure is not permitted because the term "nominal party" doesn't appear in the Idaho Rules of Civil Procedure, the 'nominal' party

13

approach is not contemplated by the Rules, and Idaho Rule of Civil Procedure 54(a) does not permit a judgment against a nominal party that would comport with Jackson's desired result.

In this case, there can be a nominal party under Idaho law because this Court's precedent supports its use in limited situations and a judgment can be crafted to allow Jackson to recover from Crow without offending Rule 54(a) of the Idaho Rules of Civil Procedure.

First, this Court's case law supports the use of nominal parties in limited circumstances. For example, in *Pigg,* an injured party sued the State seeking to recover from the State's insurer after colliding with a tractor-trailer that a police officer had pulled over to the side of the road. 79 Idaho at 236–37, 314 P.2d at 610. The trial court dismissed the case on sovereign immunity grounds. *Id.* at 243, 314 P.2d at 614. This Court reversed, stating that although the State was immune to suit, it "must continue as a nominal party defendant for the purpose of trial and judgment in order that the liability of the insurer, if any, may be thus determined and fixed." *Id.* at 245, 314 P.2d at 616. The insurance contract at issue provided that the State's insurer could not be sued until the amount of the liability against the State had been determined by judgment. *Id.* at 244, 314 P.2d at 615. The policy also provided that the insurer would not claim exemption for liability based on the fact that the State might be immune from suit. *Id.* at 244–45, 314 P.2d at 616. The *Pigg* Court reasoned that the suit must continue because "the insurer intended to and did contract to assume and pay damages to the extent of the policy limits, to persons injured through the negligence of those . . . covered by the policy." *Id.* at 245, 314 P.2d at 616. If a judgment could not be procured against the State, then the insurer would not be obligated to pay and the premium "paid to and received by the insurer for bodily injury and property damage insurance . . . would have been without consideration." *Id.*

Similarly, in *Reed*, a mother and father sued their son after he had caused an accident which resulted in the death of his sibling. 109 Idaho at 849, 712 P.2d at 550. Based on the household exclusion clause in the contract that insured the vehicle, the insurer sought to avoid coverage for the liability. *Id.* at 851, 712 P.2d at 552. This Court held that the household exclusion was unenforceable because section 49-1521 of the Idaho Code required liability insurance against loss suffered by "any person." *Id.* at 852–53, 712 P.2d at 553–54. The Court held that normally such clauses are consistent with the interfamily immunity doctrine. But the Court "decline[d] to implement the immunity to this narrow area" because doing so would be void against the public policy embodied in section 49-1521. *Id.* at 851, 712 P.2d at 552. The

14

*Reed* court held that "intrafamily actions may be maintained in this narrow area, but only up to the limits of the automobile liability insurance policy." *Id.* at 854, 712 P.2d at 555. Though this Court never expressly stated that the family-member defendant would be a nominal party, Jackson argues that *Reed* implies its use.

Relying on the parallels between *Pigg* and *Reed* and the present case, Jackson argues that a nominal-party framework should be used here. Jackson urges that *Pigg* indicates that this Court has sanctioned the use of nominal parties to "determine the amount of damages from which a surety would be liable despite the fact that the defendant [sic] was barred from collecting damages from the insured."

Recalling the facts of *Pigg*, this Court required the State to act as a nominal defendant in order to allow the plaintiff to obtain a judgment against the State so that he could recover from the State's insurer per the insurance contract. *Pigg*, 79 Idaho at 245, 314 P.2d at 616. As conceded by Crow, this does not offend the no-direct-action rule because it does not skip Step 1 of the two-step insurance contract. But Crow's policy is essentially the same, despite the district court ruling otherwise.

To illustrate, the contractual provision at issue in *Pigg* is as follows:

No action shall lie against the Company * * * until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the Company as a co-defendant in any action against the Insured to determine the Insured's liability.

*Id*. (asterisks in original).

Crow's insurance policy reads as follows:

**Legal Action Against Us**

We may not be sued unless there is full compliance with all the terms of this policy. We may not be sued under the Liability Coverage until the obligation of a person we insure to pay is finally determined either by judgment against that person at the actual trial or by written agreement of that person, the claimant and us.

15

There is not a significant difference between the two provisions. While the *Pigg* policy appears to contain an additional explanatory paragraph that Crow's policy does not, the result is the same: In order to sue the insurer, the claimant must first obtain a judgment against the insured. Furthermore, in *Pigg*, the State's insurer had contracted to provide coverage regardless of the State's immunity status.[4] Accordingly, the *Pigg* court reasoned, to allow the State's insurer to avoid liability based on the State's immunity would render the policy term without consideration. The same reasoning applies here. Crow's insurer contracted to cover Crow's liability in the event of bankruptcy, as shown by the following provision in the policy:

**Bankruptcy:**

We are not relieved of any obligation under this policy because of the bankruptcy or insolvency of any insured person.

Allowing Crow's insurer to be relieved of its obligation by virtue of Crow's bankruptcy despite expressly contracting for coverage in such circumstances would render the provision without consideration.

Crow argues next that *Pigg* was decided before Idaho adopted the Idaho Rules of Civil Procedure. Crow argues that the word "nominal party" does not appear in the Idaho Rules of Civil Procedure and that the Rules do not contemplate nor sanction the use of nominal parties. The fact that the term is not mentioned by the Idaho Rules of Civil Procedure does not per se prohibit nominal parties.

As defined, a nominal party is:

A party to an action who has no control over it and no financial interest in its outcome; esp., a party who has some immaterial interest in the subject matter of a lawsuit and who will not be affected by any judgment, but who is nonetheless joined in the lawsuit to avoid procedural defects.

Black's Law Dictionary, *Party* (10th ed. 2014). As commonly used, a nominal party refers to "one, who, having some interest in or title to the subject matter of the lawsuit, will not be affected by the judgment." Bryan A. Garner, *Garner's Dictionary of Legal Usage* 607 (3rd ed.

---

[4] The language of that provision was:

It is hereby agreed that the Company will not, in case of loss or damage arising under this policy during the term thereof, claim exemption from liability to the named insured by reason of any statute, ordinance or other legal restrictions whereby the named insured by reason of its being a governmental body may be legally exempt from liability for damage, and that in all cases of loss or damage, claims shall be handled as therein provided the same as though the named insured were a private corporation.

*Pigg*, 79 Idaho at 244–45, 314 P.2d at 616 (1957).

2011). Thus, the touchstone criterion of a nominal party is that they are not affected by the judgment. Under this definition, Crow fits the mold of a party "not affected by the judgment" as a discharged debtor. Indeed, the section 524(a)(2) permanent injunction prohibits any attempt to recover from her personally on the judgment. Likewise, Crow fits the definition because her presence is needed "to avoid procedural defects" since Jackson is unable to complete Step 1 of the two-step recovery process without her.

Further extracted from the definition is that the nominal-party framework is used by courts under their broad equitable powers. In *Pigg*, this Court was faced with the option to either allow a nominal party or leave a meritorious claim barred by procedural anomaly. The *Pigg* Court allowed the use of a nominal party. The same rationale applies here. In the limited circumstance when judgment against a judgment-proof defendant is required as a prerequisite to recovery from an insurer, naming a nominal defendant is within a court's equitable powers. While "nominal" or "nominal party" may not appear in the Idaho Rules of Civil Procedure, naming a nominal defendant in this situation comports with admonition that the Rules "should be construed and administered to secure the just, speedy and inexpensive determination of every action and proceeding." I.R.C.P. 1(b). Thus, the district court erred in prohibiting Jackson from proceeding against Crow as a nominal defendant.

Crow's last argument states that even if naming a nominal party is allowable under Idaho law, the district court still distinguished *Pigg* on the grounds that the current requirements for judgment under I.R.C.P. 54(a)(1) are incompatible to the holding in *Pigg*. The *Pigg* court required that if a verdict were entered against the State, "the judgment entered thereon must in terms provide[] that the state is not liable therefor nor for any costs or expenses involved in the action, and that the judgment determines the liability of the insurer and fixes the amount of such liability, with the limits of the policy." 79 Idaho at 245, 314 P.2d at 616. The district court ruled that such a judgment is not permissible under the current requirements for judgments under I.R.C.P. 54(a)(1).

However, no special judgment is needed in this case. While a judgment against Crow cannot be legally enforced against her by virtue of the section 524(a)(2) permanent injunction, it is still valid for purposes of establishing her liability to recover from her insurer under the § 524(e) Exception.

Although the judgment is unenforceable against Crow personally, it is not toothless. Once the judgment is entered, Jackson may still recover from Crow's insurer despite being prohibited from seeking satisfaction from Crow personally. First, under Idaho law, Jackson's ability to recover from the insurer is not predicated on Crow's payment of the judgment:

> (5) Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:
>
> . . .
>
> (b) Satisfaction by the insured of a judgment for injury or damage shall not be a condition precedent to the right or duty of the insurance carrier to make payment on account of the injury or damage.

I.C. § 49-1212. Second, in view of Crow's policy, once the judgment is entered, Crow's insurer has consented to be sued. There is no requirement in the policy's no-action provision that requires Jackson to execute the judgment against Crow. Nor is there a requirement that Jackson attempt to execute the judgment against Crow. As such, Jackson may bring suit against Crow's insurer once the judgment is entered. Therefore, the district court erred in ruling that entering a judgment against Crow to permit Jackson to recover from her insurer was impermissible under the Idaho Rules of Civil Procedure.

Based on these considerations, there is a mechanism for suing a defendant nominally and then enforcing the judgment against the defendant's insurer.

4. <u>The district court erred in ruling that a nominal suit against Crow would violate her "fresh start" guaranteed by the Bankruptcy Code.</u>

The remaining question is whether allowing the case to proceed against Crow would violate her "fresh start" under the Bankruptcy Code. The Bankruptcy Code's "discharge and the concomitant injunction against subsequent actions are designed to give the debtor a financial 'fresh start.'" *In re Jet Fla. Sys., Inc.*, 883 F.2d 970, 972 (11th Cir. 1989). As the district court acknowledged, federal courts applying the § 524(e) Exception generally caution that "an action against the debtor nominally must not cause any negative economic consequences to the debtor." Crow argues that federal courts have declared judgments that could "potentially cause a debtor's insurance rates to increase, impact future employment, or otherwise interfere with the debtor's ability to obtain a financial 'fresh start in her economic life . . .'" impermissible under the § 524(e) Exception. Crow argues that a judgment against her would result in such negative impacts.

18

Despite originally including other factors in its memorandum decision, the district court ultimately concluded that "the fact that a judgment is entered and may have to be disclosed in the future to employers or creditors may have a negative economic effect" on Crow. Though these factors appear to have been gleaned from the letter Jackson's counsel sent to Crow's counsel, the district court nevertheless stated that the factors were not gleaned from the letter, but were "a practical and common sense understanding of the impacts of any judgment . . . ." There is nothing further in the record suggesting that Crow would be otherwise financially harmed by the suit. The district court erred in concluding these factors rise to the level of negative economic consequences impermissibly impacting Crow's financial fresh start.

The *In re Beeney* Court addressed a defendant's argument that, because he was a truck driver, allowing suit against him to establish liability on an automobile accident would impair his financial fresh start by impacting his future employment prospects. 142 B.R. at 363. The bankruptcy panel rejected this argument, finding the argument "tenuous" and relying on too many inferences. *Id.* ("[I]f the insurance company does not vigorously defend, and if [plaintiff] prevails, and if [defendant's] insurance rates increase, and if [defendant] loses his hazardous materials license, then he might lose his job.").

A case Crow cites on this issue, *In re Daniels,* is also illustrative. 493 B.R. 740 (N.D. Miss. 2013). *In re Daniels* involved a physician who was sued prior to declaring bankruptcy for a medical-malpractice claim arising from his care of the plaintiff during childbirth. *Id.* at 741. Noting that its decision was against the grain of the federal authority, the bankruptcy court held that the plaintiff was prohibited from proceeding against the defendant—even nominally. *Id.* at 746. While noting that courts should depart from the § 524(e) Exception only in "a rare and unique case," the court found such circumstances because the physician's insurer was insolvent:

> Typically, an insurance company is compelled to defend an insured debtor, because the insurance company is responsible to do so pursuant to its contract with the debtor and to avoid payment of a default judgment. Such incentives are not present in the instant case. The Debtor's insurer, DIR, is insolvent, no longer exists, and cannot indemnify the Debtor. Not only does DIR have no incentive or ability to defend this case, the Receivership has made it clear that it will not indemnify the Debtor nor defend the State Court Action on the Debtor's behalf.

*Id.* (citations omitted). Further, the fact that it was a medical-malpractice claim yielded other consequences not typical to nominal defendants:

> The Debtor credibly testified that a judgment against him would not only cause his malpractice insurance rates to increase, but would also cause significant

> problems for him in his ability to earn a living and future employment, as a judgment or settlement would have to be reported to any hospitals at which he seeks or has privileges, as well as to any potential employer.

*Id.* at 747.

Here, there appears to be little evidence in the record providing the "rare and unique" facts that would violate Crow's financial fresh start. The only evidence appears to be Jackson's letter that a judgment may have a negative impact on future employers and may have a negative effect on Crow's credit rating. However, the district court stated that the letter "was not relied upon by the Court in reaching its conclusion . . . ." Therefore, the only evidentiary basis left for the ruling is "a practical and common sense understanding of the impacts of any judgment." This finding is difficult considering that on a motion for summary judgment, "[t]his Court liberally construes all disputed facts in favor of the nonmoving party and draws all reasonable inferences and conclusions supported by the record in favor of the party opposing the motion." *Chandler v. Hayden*, 147 Idaho 765, 768, 215 P.3d 485, 488 (2009).

There is no evidence in the record that even hints that Crow's career will be negatively impacted by a judgment. Likewise, whether or not a judgment will impact the financial fresh start by negatively affecting the debtor's credit rating appears to be based on speculation, rather than facts in the record, particularly in a case where the defendant has filed bankruptcy.

Given (a) the sparseness of the evidentiary record on this issue, (b) the summary-judgment standard requiring all inferences be cast in the light most favorable to Jackson, and (c) the case law outlining what negative economic consequences rise to the level of "fresh start" violation, we conclude that the district court erred in granting summary judgment in favor of Crow on this issue.

Lastly, the district court also commented that it would be "unfair and prejudicial" for Jackson to enter a judgment against Crow in any capacity because: he failed to pursue the action during the pendency of his bankruptcy; he failed to seek relief from the automatic stay to pursue the litigation during Crow's bankruptcy; and he received a pro rata distribution from Crow's bankruptcy estate.

While some of these considerations may bear on Crow's asserted defense of laches or judicial estoppel, they do not bear on the issues forming the basis of the district court's grant of summary judgment. First, for purposes of Jackson's claim under the § 524(e) Exception, the bankruptcy trustee abandoned the claim at the close of his bankruptcy. That action removed the

20

claim from the bankruptcy estate and it reverted back to Jackson. Thus, it became Jackson's claim to pursue. Second, while Jackson could have filed a motion for relief from the automatic stay to pursue this action, having done so is not required to preserve the action under the § 524(e) Exception if the failure to do so does not result in any prejudice to the debtor or the insurer. *See, e.g.*, *Green v. Welsh*, 956 F.2d 30, 35 (2d Cir. 1992); *In re Beeney*, 142 B.R. at 362. Crow has not alleged prejudice from that delay. Granted, Crow has alleged prejudice from delay generally, but that argument addressed the broader context of this litigation, not the precise delay from the close of Crow's bankruptcy to the request for a status conference. Lastly, though Jackson received a payout from Crow's bankruptcy estate in the amount of $1,932.45, this does not impact whether he may pursue the suit under the § 524(e) Exception. Rather, the amount actually distributed to Jackson from Crow's bankruptcy estate should be credited against any judgment that is entered to prevent a double recovery.

In conclusion, allowing Jackson to pursue Crow nominally to recover from her insurer does not violate: the Bankruptcy Code's permanent injunction; the Bankruptcy Code's "fresh start" policy; Idaho's no-direct-action rule; or the Idaho Rules of Civil Procedure. Thus, we vacate the district court's grant of summary judgment in favor of Crow on these issues and remand for further proceedings

**B. Jackson's argument that Farmers should be joined as a defendant is without merit because joinder at this juncture would violate the no-direct-action rule.**

The no-direct-action rule bars direct suit against an insurer without statutory or contractual authority. No statute permits direct action in Idaho. Crow's contract requires that Step 1 (judgment be entered against the insured) be completed before Step 2 (direct suit against the insurer) is permitted. Joinder at this juncture would impermissibly skip Step 1, thereby violating the no-direct-action rule. Accordingly, we deny Jackson's invitation to join Crow's insurer to this action.

**C. Jackson's argument that he is entitled to summary judgment on the record lacks merit because it is outside the scope of this Court's review.**

Jackson asks this Court to review the district court's denial of his February 1, 2017, motion for partial summary judgment on the issue of liability which was later expanded via supplemental memorandum to include damages. Jackson argues he is entitled to summary judgment on liability and damages because "allowance of a claim in bankruptcy has a preclusive effect in subsequent litigation concerning liability and damages." When it granted Crow's

21

motion for summary judgment, the district court declared Jackson's motion for summary judgment moot. Crow argues that the denial of a motion for summary judgment is interlocutory and not reviewable under this Court's precedent.

Because the district court found that Crow's motion for summary judgment was dispositive of the case, it determined Jackson's motion to be moot. Given our decision in this case, Jackson's motion is not moot and should be considered by the district court upon remand.

## V.   CONCLUSION

For the reasons stated above, we vacate the district court's judgment in favor of Crow and remand for further proceedings, including consideration of Jackson's motion for summary judgment which the district court previously determined was moot. Costs to Jackson.

Justices BRODY, BEVAN, and STEGNER, **CONCUR**.

HORTON, Justice, concurring.

I join in the Court's opinion. I write separately for one reason: to address the windfall that Jackson stands to receive by reason of his attorney's actions, or more accurately, inaction. As the Court's opinion indicates, on February 4, 2013, Jackson filed a voluntary petition for Chapter 7 bankruptcy. His petition identified his claim against Crow as an asset. He was granted a discharge on June 4, 2013, relieving him of his financial obligations to more than 75 creditors. On June 26, 2013, the bankruptcy trustee requested that the bankruptcy court approve employing Jackson's attorney as special counsel to pursue the claim against Crow for the benefit of Jackson's creditors. The next day, the bankruptcy trustee and Jackson's attorney entered into an agreement for legal representation in which Jackson's attorney agreed to represent the bankruptcy trustee's interest in this action. In a verified statement to the bankruptcy court, Jackson's attorney represented that it was his understanding that Jackson and the trustee had "agreed to divide the proceeds of any settlement or judgment between them, after taking into consideration subrogation interest of Boise City" arising from its payment of workers compensation benefits. On August 5, 2013, the bankruptcy court entered its order approving the employment of Jackson's attorney as special counsel.

On January 8, 2014, Crow filed her petition for Chapter 7 bankruptcy and her case was closed in the late spring of 2016.

Despite his employment as special counsel for the bankruptcy trustee, for nearly three years, Jackson's attorney did nothing to pursue Jackson's claim against Crow. As a result of the

closure of the parties' bankruptcy cases, in Jackson's attorney's words, "Mr. Jackson's claim reverted back to him as a matter of law free of any interest in it held by the Bankruptcy Estate."

Thus, Jackson stands to reap a windfall in the form of double the recovery that he would have otherwise received by reason of Jackson's attorney's failure to diligently prosecute this claim. This is a factor that the district court may properly consider in evaluating Crow's defense based upon laches, an issue not presented by this appeal.